**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROBERT S. EVANS,

　　　　　*Plaintiff-Appellant,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

　　　　　*Defendant-Appellee.*

No. 03-1065

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(CA-02-23-6)

Argued: December 4, 2003

Decided: February 10, 2004

Before WILLIAMS, MOTZ, and SHEDD, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Shedd wrote the
opinion in which Judge Motz joined. Judge Williams wrote a concur-
ring opinion.

---

## COUNSEL

**ARGUED:** Charles Hardenbergh Osterhoudt, OSTERHOUDT,
PRILLAMAN, NATT, HELSCHER, YOST, MAXWELL & FER-
GUSON, P.L.C., Roanoke, Virginia; Craig Patrick Tiller, DAVID-
SON, SAKOLOSKY, MOSELEY & TILLER, P.C., Lynchburg,
Virginia, for Appellant. Eric Wagner Schwartz, TROUTMAN

SANDERS, L.L.P., Virginia Beach, Virginia, for Appellee. **ON BRIEF:** John C. Lynch, TROUTMAN SANDERS, L.L.P., Virginia Beach, Virginia, for Appellee.

---

## OPINION

SHEDD, Circuit Judge:

In this ERISA appeal, we consider whether Metropolitan Life Insurance Company (MetLife) abused its discretion in denying the claim for long-term disability (LTD) benefits filed by Robert S. Evans. The district court granted summary judgment in favor of MetLife, finding that MetLife did not abuse its discretion. For the following reasons, we vacate the judgment of the district court and remand for further proceedings.

### I.

Evans, a nuclear fuels engineer employed at BWX Technologies, Inc. (B&W), began experiencing abdominal pain and fatigue in February 1999. Evans first received treatment from his family physician, Dr. Kim Wright, but his abdominal pain persisted. Dr. Wright referred Evans to a gastroenterologist. Both Dr. Wright and the gastroenterologist diagnosed Evans as suffering from chronic abdominal pain and irritable bowel syndrome (IBS).

Despite his condition, Evans continued to work from February 1999 through December 1, 1999. Commencing December 2, 1999, Evans was given a week off from work. Dr. Wright thereafter continued Evans off work for more than six months. Evans's childhood stuttering returned, so Dr. Wright referred him to a psychologist, Dr. Daniel Owens, for assessment in January 2000. Dr. Owens continued treating Evans through at least September 2000. While Evans was away from work, Dr. Wright also referred him to another gastroenterologist at the University of Virginia for a second opinion. That doctor changed Evans's medications, which provided some short-term relief.

Because Evans was feeling somewhat better, Dr. Wright thought it would be appropriate to return Evans to work at B&W on June 19,

2000. Dr. Wright hoped that once Evans returned to the routine of his job that his condition might continue to improve. Over the next six weeks, Evans worked sporadically; he worked some part-time days and some full-time days, but he also took off several sick days. His last day at work was July 27, 2000. Evans took several more leave days thereafter until August 9, 2000, when it appears B&W placed him on approved medical leave of absence.

B&W offers its employees LTD benefits through a group disability insurance policy (the Plan) issued by MetLife. MetLife is also the administrator of the Plan. B&W filed the initial LTD application form with MetLife on behalf of Evans on August 9, 2000. On the form, B&W indicated that Evans's "Date Last Worked" was December 1, 1999, but that his "Date Returned to Work" was June 19, 2000.

MetLife then contacted Evans, requesting that he submit several other forms and documentation. In response, Evans stated on his Disability Claim Employee Statement that his "Date Last Worked" was August 1, 2000, and that the "Date Disability Began" was December 2, 1999. He also explained that he was at that time suffering from almost constant abdominal pain, had frequent urges to use the restroom (often with less than 90 seconds' warning), spent from two to six hours every day in the restroom, and was generally mentally exhausted.

Evans also submitted Attending Physician Statements from some of his treating doctors. The first gastroenterologist indicated that he had treated Evans for IBS but had last seen him on June 15, 2000 — a few days before Evans returned to work.[1] Dr. Wright stated that Evans was suffering from IBS. She also indicated that she had discussed with Evans before August 2000 the possibility that he might be disabled from performing his job but that she definitely advised

---

[1]The gastroenterologist did not respond to all the questions on the form. In particular, he did not state whether he advised Evans to cease work. MetLife attempts to draw the inference from this omission that the gastroenterologist did not believe that Evans was disabled. We disagree. The fact that the gastroenterologist did not answer the question one way or the other means that no inference can be drawn from the nonresponse.

Evans to cease his job as of August 8, 2000. Dr. Owens indicated that he advised Evans to cease his job as of July 27, 2000.

MetLife denied Evans's claim for disability, concluding that there was no evidence supporting his claimed inability to perform his job. MetLife also concluded there was no medical documentation establishing that Evans was suffering from IBS.

Evans hired a lawyer to appeal MetLife's denial. The lawyer wrote a lengthy letter outlining the purported errors made by MetLife in its review. The lawyer also submitted letters from Dr. Wright and Dr. Owens further explaining their opinions that Evans became disabled on about his last day at work — July 27, 2000. The lawyer also submitted a copy of the Social Security Administration's award of disability benefits to Evans effective December 2, 1999. The lawyer insisted that the evidence showed that Evans was disabled as of December 2, 1999.

MetLife reviewed this new documentation, but affirmed its original denial of Evans's LTD claim. MetLife stated that Evans's last day of work was December 1, 1999 — not July 27, 2000 as the record clearly reflects — and that there was no evidence to support a disabling impairment as of December 1, 1999. In support of this finding, MetLife relied in part on the opinions of Drs. Wright and Owens that Evans did not become disabled until on or about August 1, 2000.

Evans then filed this ERISA lawsuit against MetLife, seeking to recover benefits under the Plan. MetLife moved for summary judgment, arguing that it properly exercised its discretion in deciding that Evans had failed to establish that he was totally disabled "when he quit work on December 1, 1999." J.A. 42. In his written response, Evans argued, in effect, that MetLife failed to give adequate weight to the evidence Evans submitted. Evans did not expressly argue in his brief that MetLife should have determined whether he was disabled as of August 2000 rather than as of December 2, 1999.

The district court held a hearing on MetLife's motion for summary judgment. During the hearing, MetLife contended that it was Evans's burden, pursuant to the Plan requirements, to show that he was totally disabled from the time he quit work — December 2, 1999 — and

thereafter through a six-month "Elimination Period." Although MetLife has never stated a specific date, this "Elimination Period" would have expired, based on MetLife's interpretation of the Plan, on June 2, 2000, before Evans returned to work on June 19, 2000.

Evans countered, for the first time before the district court, that the disability determination should have been made as of August 2000, after Evans returned to work. In reply, MetLife conceded that there was some medical evidence in the record that Evans was disabled as of August 2000, but MetLife insisted that the proper date to determine disability was as of December 2, 1999 and during the subsequent six-month "Elimination Period."

The district court granted summary judgment in favor of MetLife, ruling that MetLife's decision to deny benefits resulted from a reasoned, disciplined, deliberative process. The district court did not, however, indicate whether the proper date to determine disability was as of December 2, 1999 or August 2000.[2]

Evans now appeals, arguing that MetLife's use of December 1999 as the date to determine disability contravenes the terms of the Plan. He contends that MetLife abused its discretion by ignoring evidence that he was totally disabled as of August 2000.[3]

## II.

When an ERISA plaintiff appeals a grant of summary judgment, we conduct a de novo review, applying the same standards that the district court employed. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). In cases in which the ERISA benefit plan gives the administrator of the plan discretion to determine eligibility

---

[2]The district court can hardly be criticized for not focusing on whether December 1999 or August 2000 was the proper disability determination date. Evans failed to argue that August 2000 was the proper date until oral argument on the motion for summary judgment and did so only modestly. Nevertheless, the argument was made to the district court, and it is preserved for our review on appeal.

[3]Evans advances other arguments, but we need not reach them since we are remanding the case for further administrative review.

for benefits, we review a denial of benefits by the administrator for abuse of discretion. *Id.* at 232. Under this deferential standard, we will not disturb the administrator's decision if it is reasonable, even if we would have come to a different conclusion independently. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 341 (4th Cir. 2000). Such a decision is reasonable if it is the result of a deliberate and principled reasoning process and is supported by substantial evidence. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).

In this case, it is undisputed that the Plan gives MetLife discretionary authority to determine entitlement to Plan benefits. Thus, we review MetLife's denial of Evans's claim for benefits for an abuse of discretion. However, because MetLife is both administrator of the Plan and its insurer, a conflict of interest exists, and that conflict must be weighed as a factor in determining whether an abuse of discretion occurred. *See Ellis*, 126 F.3d at 233.[4]

### III.

MetLife insists that Evans could not recover benefits unless he proved that "he was totally disabled when he quit work in December 1999 and continuously through the six-month Elimination Period." MetLife Brief, p. 22. MetLife claims that Evans failed to produce any evidence that he was disabled during this particular period — December 2, 1999 through June 2, 2000. MetLife relies in part on the opinions of Dr. Wright and Dr. Owens — that Evans should have ceased work no earlier than July 27, 2000 — to suggest that Evans was not disabled from December 2, 1999 through June 2, 2000.

We do not agree that Evans was necessarily required to prove that he was disabled from December 2, 1999 through June 2, 2000. First, Evans did not "quit work" on December 2, 1999. Although Evans did not work from December 2, 1999 through June 19, 2000, the undisputed evidence in the record is that Evans remained an employee of

---

[4]At oral argument on appeal, Evans argued for the first time that the district court should have employed the less deferential de novo standard of review rather than abuse of discretion. We deem this argument abandoned on appeal. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

B&W until at least August 2000. He actively worked more than ten days between June 19 and July 27, 2000 and was subsequently allowed to take several leave days through August 8, 2000.

Second, MetLife has failed to cite any provision in the Plan that would necessarily start the disability determination date as of the date Evans "quit work."[5] To the contrary, the Plan provides:

> When we [MetLife] receive proof that you are Totally Disabled, we will pay a Monthly Benefit in accordance with the SCHEDULE OF BENEFITS.

J.A. 74. Under this provision, the clock for determining disability under the Plan starts whenever MetLife receives sufficient proof that an eligible participant becomes totally disabled. Based on this provision, MetLife is free to deny benefits once it decides — based on a deliberate, principled review of the evidence it receives — that the participant has failed to produce sufficient proof that he is totally disabled. However, what MetLife may not do under this provision is to base its determination of disability as of a particular date if the evidence submitted establishes another date that the disability may have begun.[6] MetLife is obligated under the Plan to consider all the evidence it receives and must pay monthly benefits if it receives proof that the eligible participant[7] is totally disabled.[8]

---

[5]"Quit work" is not a term used in, or defined by, the Plan.

[6]We are aware that Evans stated in his initial form seeking benefits that his disability began on December 2, 1999, and that his lawyer, relying in part on the award of benefits by Social Security, also represented during the administrative appeal that Evans's disability commenced December 2, 1999. Nevertheless, MetLife was not allowed, under the Plan, to necessarily limit its disability determination to the date claimed by Evans and his lawyer. The Plan requires MetLife to review all evidence it receives to determine disability. MetLife admittedly had evidence before it throughout its administrative review that Evans's alleged disability may have begun after his last day of work, July 27, 2000.

[7]Throughout this entire case, MetLife has never argued that Evans is not an eligible participant under the Plan. Now, for the first time, the concurrence suggests, based on policy language not raised by MetLife, that MetLife should have first determined whether Evans was an eligible

It is clear in this case that MetLife improperly refused to consider whether the evidence it received established that Evans was disabled as of August 2000. MetLife candidly admitted to the district court that there was some evidence that Evans was disabled as of August 2000, but it argued that this evidence was immaterial because the proper determination date was December 2, 1999, the date Evans originally claimed he became disabled. In fact, there is absolutely no evidence in the record that MetLife considered any date other than December 2 as an acceptable date to consider whether Evans's disability began. MetLife, in effect, ignored the evidence that Evans may have been disabled as of August 2000. Because MetLife refused to consider the evidence and the claim as of August 2000, we conclude that MetLife abused its discretion. *See James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)(stating that "failure or refusal, either express or implicit, actually to exercise discretion" constitutes an abuse of discretion).

---

participant under the Plan as of August 2000. We do not confront this issue because it is not before us. Our review is to determine whether MetLife abused its discretion in the actions it took — and its stated justifications — in denying benefits to Evans.

[8]MetLife asserts that the "Elimination Period" began on December 2, 1999, the date Evans originally claimed he became disabled. MetLife's interpretation of when the "Elimination Period" began is also incorrect.

According to the Plan, the "Elimination Period" is the "number of consecutive days [at least six months] of Total Disability before Long Term Disability Benefits become payable," and it commences "on the first day of Total Disability." J.A. 73. Thus, the "Elimination Period" begins when MetLife determines that it has received sufficient proof that a participant is totally disabled. MetLife would then become obligated to pay monthly benefits, starting when the "Elimination Period" expires — at least six months later. Obviously, if MetLife determines that a participant is not totally disabled, the "Elimination Period" never commences.

In this case, MetLife decided that Evans was not totally disabled, so the "Elimination Period" never started. If, however, MetLife were to decide on remand that Evans became totally disabled as of August 2000, the "Elimination Period" would have started in August 2000, and MetLife's obligation to pay monthly benefits would not have commenced before February 2001 — at least six months later.

IV.

Because MetLife abused its discretion by failing to consider whether Evans was disabled as of August 2000, we vacate the judgment of the district court and direct the district court to remand this case for further administrative review by MetLife consistent with this opinion.

*VACATED AND REMANDED*

WILLIAMS, Circuit Judge, concurring in the judgment:

Although I agree with the majority's ultimate conclusion that MetLife abused its discretion by improperly failing to consider whether Evans was totally disabled while he was actively at work, I write separately to note my disagreement with the majority's characterization of MetLife's actions and the Plan's requirements.

I.

Robert Evans, as an employee of Babcock & Wilcox Co., was covered by its Long Term Disability Plan (Plan), administered and insured by Metropolitan Life (MetLife). The Plan provided benefits for employees who were "Totally Disabled." (J.A. at 74.) Total disability "means that, due to an Injury or Sickness," an employee:

  1. [is] completely and continuously unable to perform each of the material duties of [his] regular job; and

  2. require[s] the regular care and attendance of a Doctor.

(J.A. at 74.)

The Plan also states that "[w]hen [MetLife] receive[s] proof that [an employee is] Totally Disabled, [it] will pay a Monthly Benefit in accordance with the SCHEDULE OF BENEFITS." (J.A. at 74.) The Plan included an Elimination Period, defined as "the number of consecutive days of Total Disability before Long Term Disability Bene-

fits become payable."[1] (J.A. at 73.) The Elimination Period begins "on the first day of Total Disability," but allows for "[l]imited interruption," which is defined as returns to work of "up to 30 days" that would not restart the period. (J.A. at 73.)

Availability of the benefits under the Plan ends "on the date . . . employment ends." (J.A. at 78.) Employment ends, for purposes of the Plan, "when [an employee] cease[s] Active Work." (J.A. at 78.) An employee is actively at work when he is "performing all of the material duties of [his] job with the Employer where these duties are normally carried out." (J.A. at 73.) The Plan permits "the Employer [to] deem employment to continue for certain absences [for purposes of the Plan]." (J.A. at 78.) As relevant here, absences for "Sickness or Injury," may be counted as active work under the Plan for "[t]he period determined in accordance with the Employer's general practice." (J.A. at 79.) The Plan also permits an employee on a "Leave of Absence" to be deemed actively at work and eligible for benefits with the caveat that "the period will not be longer than two months following the date the leave of absence . . . begins." (J.A. at 79.) Thus, under the terms of the Plan, an individual could remain on his employer's payroll but still be ineligible for the Plan's benefits because he was not actively at work.

On October 19, 2000, MetLife issued its first denial of Evans's request for LTD benefits, which was made "effective [as of] August 9, 2000." (J.A. at 120-21) (the October 19 denial). At no point in that October 19 denial letter did MetLife state that Evans "quit work" on December 2, 1999. To the contrary, the October 19 denial referred to medical records from as late as June 2000 and thus does not warrant a finding that MetLife limited its review of Evans's claim to his status on December 2, 1999.

In response to the October 19 denial, Evans's attorney submitted a letter on December 6, 2000, stating that "Mr. Evans is totally and permanently disabled and has been so since December 2, 1999." (J.A. at 97.) The letter noted that the Social Security Administration determined that Evans was totally disabled under its rules as of December

---

[1]The parties agree that the Elimination Period for Evans was six months.

2, 1999. The letter also referred to correspondences by Dr. Wright, Evans's primary care physician, and Dr. Owens, Evans's psychologist, stating that Evans was disabled as of about August 2000. Thus, after that letter from Evans's attorney, MetLife had before it two different dates on which Evans's disability may have begun: December 2, 1999 and August 1, 2000.

As the majority notes, MetLife conducted a review of the October 19 denial, and, on March 7, 2001, issued a letter upholding the denial of Evans's claim. It was in this letter that MetLife, for the first time, limited its review of Evans's claim to whether he was totally disabled as of December 2, 1999.

## II.

I concur in the majority's holding that MetLife abused its discretion when handling Evans's request to review the October 19 denial.[2] When determining if a plan administrator has abused its discretion we are required to consider "the language of the plan." *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342 (4th Cir. 2001). Here, MetLife's first duty under the Plan was to determine the period during which Evans was actively at work and thus eligible to receive the Plan's benefits. After MetLife made that determination, it was obliged to decide whether Evans had submitted "proof that [he was] Totally Disabled" during that period. (J.A. at 74.) Only after making such a finding, was MetLife permitted to determine the date of onset of total disability in order to start the Elimination Period.

On appeal, MetLife argues that Evans' Elimination Period began on December 2, 1999 when he took leave from work.[3] MetLife also argues that Evans was never totally disabled. The Plan does not allow MetLife to make these arguments in that order or simultaneously. If Evans did not submit proof that he was totally disabled, then the

---

[2]Evans conceded in his Reply Brief (Reply Br. at 3), and I agree, that MetLife did not abuse its discretion in denying the original claim on October 19, 2000.

[3]Notably, MetLife does not argue that Evans was not actively at work and, accordingly, we assume that Evans was an eligible participant prior to filing his claim for benefits on August 9, 2000.

Elimination Period never began and Evans's few days of work in June and July cannot be viewed as limited interruptions of the Elimination Period, as MetLife contends. Although MetLife never questioned whether Evans was actively at work and eligible for the Plan's benefits, it was not permitted to determine whether Evans was disabled as of a specific date absent first finding that, due to injury or sickness, Evans was completely and continuously unable to perform each of the material duties of his job and was under the regular care and attendance of a physician. I thus agree with the majority that MetLife abused its discretion in conducting its review of the October 19 denial.[4]

I disagree, however, with my colleagues' statement that MetLife "refused" to consider Evans's evidence.[5] Both Evans and MetLife consistently have failed to focus on the requirements of the Plan during this litigation. I do not believe that MetLife "refused" to consider evidence, but I do believe that MetLife failed in its responsibility to interpret the Plan's language and apply it to the facts as it found them.

I also wish to emphasize that my colleagues do not shift the burden of proving a claimant's case to MetLife. As we have explained, "[an administrator] must treat each claimant with procedural fairness, but . . . it is not its duty to affirmatively aid claimants in proving their claims." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir. 1997). By definition, a plan administrator is a passive entity that accepts claims and does not actively seek them. A plan administrator has a duty to conduct a full and fair review of benefit applications

---

[4]I do not suggest, nor do I read my colleagues' opinion as suggesting, that MetLife would abuse its discretion by denying Evans's claim on remand. As noted, the Plan's benefits only apply to individuals who become disabled while they are actively at work, or deemed to be actively at work while ill or on leave of absence. MetLife has yet to make a finding of whether Evans was actively at work after December 2, 1999.

[5]Whether Evans's proof "established" his disability as of August 2000 is a determination for MetLife to make on remand. Our inquiry is whether MetLife abused its discretion, i.e., whether MetLife's decision was "the result of a deliberate, principled reasoning process and [was] supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotation marks omitted).

"that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv) (2003). Here, Evans, in requesting a review of the October 19 denial, included opinions from two physicians stating that he was disabled as of August 2000. Absent a finding that Evans was not actively at work and thus ineligible for the Plan's benefits as of that date, MetLife was required, in conducting a full and fair review of Evans's claim, to consider that evidence and to determine whether it indicated that Evans was in fact totally disabled, and, if so, when that disability began. MetLife did not follow this process in conducting a review of its October 19 denial, and, by failing to do so, it abused its discretion.

## III.

For the foregoing reasons, I concur separately in the judgment of the majority vacating the district court's grant of summary judgment in favor of MetLife and remanding the case to MetLife for further review.