**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1255**

———————

PAMELA LARUE WILSON,

Plaintiff - Appellant,

versus

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-01-384)

———————

Argued: March 16, 2006                    Decided: May 16, 2006

———————

Before LUTTIG,[1] WILLIAMS, and MICHAEL, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Kenneth M. Johnson, TUGGLE, DUGGINS & MESCHAN, P.A., Greensboro, North Carolina, for Appellant. Stephen Alan Dunn, EMANUEL & DUNN, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** James M. Mason, EMANUEL & DUNN, P.L.L.C., Raleigh, North Carolina, for Appellee.

———————

[1]Judge Luttig heard oral argument in this case but resigned from the court prior to the time the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Pamela Larue Wilson appeals the district court's grant of summary judgment to Metropolitan Life Insurance Company (MetLife) on her claim for disability benefits. Because MetLife did not abuse its discretion in determining that Wilson had a preexisting condition and therefore was not entitled to disability benefits, we affirm.

I.

On August 12, 1996, Wilson, an Information Systems Specialist, began working for BDM Federal, Inc. in Raleigh, North Carolina. Among its benefits, BDM Federal automatically provided Wilson disability coverage under a Short Term Disability (STD) Plan, and Wilson also enrolled in the optional Long Term Disability (LTD) Plan. Both plans were provided through MetLife, which served as the fiduciary and insurer for the plans. Wilson received a booklet entitled "BDM: Your Employee Benefits Plan" (the Booklet), which described both of these plans in separate sections.[2]

_____

[2]The Employee Retirement and Income Security Act (ERISA) states that employee benefit plans "shall be established and maintained pursuant to a written instrument," 29 U.S.C.A. § 1102(a)(1) (West 1999), and that every participant in an ERISA plan shall receive a Summary Plan Description (SPD) that is "written in a manner calculated to be understood by the average plan participant" and that "apprise[s] [plan] participants . . . of their rights and obligations under the plan," 29 U.S.C.A. § 1022 (West 1999). Wilson contends that the Benefits Booklet is not simply a SPD of the STD and LTD Plans, but that it is the entire

3

An employee became eligible for benefits under each Plan on different dates. Under the STD Plan, Wilson became eligible for benefits on the date that she began working for BDM Federal –– August 12, 1996. The LTD Plan delayed an employee's eligibility for benefits until she had completed six months of continuous employment with BDM Federal, so Wilson did not become eligible for LTD benefits until February 12, 1997.

The LTD Plan also included a Pre-existing Condition Limitation, which stated

> This Plan does not provide benefits for any Disability that is caused by, contributed to by, or resulting from a Pre-Existing Condition, unless the Disability begins after you have been covered under This Plan for 12 months in a row.

(J.A. at 600.) In Wilson's Booklet, a definition of "Pre-Existing Condition" was not included in the LTD Plan. The STD Plan, however, did include a definition of "Pre-Existing Condition" even though the STD Plan did not have a Pre-Existing Condition Limitation. On page 9 of Wilson's STD Plan, "Pre-Existing Condition" was defined as

> [A] Sickness or Injury for which [an employee] received Medical Advice or Treatment during the 3 month period

text of those plans and that there is not another, more complete document serving as the official plan upon which MetLife's decision was based. MetLife does not dispute Wilson's contention, and we therefore assume Wilson is correct. See, e.g., Alday v. Container Corp. of Am., 906 F.2d 660, 662 n.2 (11th Cir. 1990) (noting that the formal ERISA plan and the SPD at issue in that case were identical).

4

immediately prior to [the employee's] effective date of Personal Benefits.

(J.A. at 586.)

As became evident later, the reason the STD Plan had a definition of "Pre-Existing Condition" was because Wilson's Booklet was flawed; pages 9 and 10 of the STD Plan and pages 9 and 10 of the LTD Plan were apparently swapped.[3]

The LTD Plan reserved to MetLife the discretionary authority "to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (J.A. at 605.) MetLife therefore possessed the authority to manage the administration of benefits under the LTD Plan.[4]

On January 22, 1997, approximately five months after she began working at BDM Federal, Wilson was evaluated at the Duke University Medical Center's Orthopaedic Clinic for heel spurs and pain in her

_____

[3]The STD Plan and LTD Plan sections had separate Tables of Contents, but the contents on pages 9 and 10 of each Plan did not correspond with the respective Table of Contents. For example, according to the Table of Contents for the STD Plan in Wilson's Booklet, page 9 should include "Provisions Applicable to Pregnancy" and "When Benefits End," but those provisions are found on page 9 of Wilson's LTD Plan. Similarly, the Table of Contents for the LTD Plan indicates that pages 7-15 should explain the details of "Long Term Disability Benefits," but those pages are interrupted by the pregnancy provisions on page 9 and a statement on page 10 of when short term disability benefits end -- terms clearly not germane to the LTD Plan.

[4]BDM Federal, the LTD Plan's official Plan Administrator, shared this authority.

left shoulder. According to the Clinic's notes, Wilson began experiencing shoulder pain after she fell down approximately ten stairs a year-and-a-half before visiting the Clinic. At the Clinic's recommendation, Wilson was further evaluated for polyarthralgias, or joint pain, on January 29, 1997, by Dr. N.M. Kredich, in Duke's Rheumatology Clinic. Dr. Kredich could not diagnose the medical cause for Wilson's joint pain, although he did rule out rheumatoid arthritis. Dr. Kredich also noted that Wilson's problems began after her fall. Two days later, on January 31, Wilson sought medical care at the Womac Army Medical Center for her persistent pain.

Because her joint pain did not abate after these medical evaluations, on June 10, 1997, Wilson stopped working at BDM Federal. A month later, she began receiving short term disability benefits. On July 15, 1997, MetLife received a Disability Claims Report that Wilson had stopped working because of "pain in [her] joints." (J.A. at 559.) On May 20, 1998, MetLife approved Wilson's claim for long term disability benefits and made those benefits retroactive to the expiration of her short term disability benefits. In April 1999, MetLife requested updated medical information from Wilson, which she provided. Although Wilson submitted no new relevant information relating to her eligibility for benefits, MetLife reviewed Wilson's file and realized from available information that her disability was caused by a condition

6

-- joint pain -- for which she had received medical advice or treatment within the three months preceding her eligibility date for LTD Plan benefits. As a result of this review, MetLife wrote Wilson on July 19, 1999, and referred her to the "Pre-Existing Condition Limitation" and to the definition of "Pre-Existing Condition" contained within the LTD Plan. (J.A. at 142-43.) Noting that Wilson was treated on January 29 and 31, 1997, for joint pain, MetLife informed Wilson that it had determined that her disability claim fell within the LTD Plan's "Pre-Existing Condition Limitation" and that it was terminating her benefits.

Wilson then brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1132 (West 1999), to have her LTD Benefits reinstated. MetLife moved for summary judgment, submitting the entire administrative record for Wilson's LTD claim, including an original Booklet.

In her response in opposition to MetLife's motion, Wilson submitted a copy of her Booklet and noted that it did not include the definition of "Pre-Existing Condition" within the LTD Plan section, unlike MetLife's Booklet. Because Wilson's Booklet contained all the information available to her about MetLife's disability plan, the district court analyzed MetLife's decision to terminate benefits under the terms of her Booklet. Analyzing the Booklet as setting forth one plan with two sections, the district court noted that although the LTD Plan section did not include a

7

definition of "Pre-Existing Condition," "the fact that the definition was contained in a previous section of [Wilson's] Plan does not mean that it is inapplicable to other sections of the Plan[] as well." (J.A. at 614.) Accordingly, the district court concluded that "the definition of 'Pre-Existing Condition' contained in the Short-Term Benefits Section of the Plan is equally applicable to give meaning to the term[] 'Pre-Existing Condition,' as used in the Pre-Existing Condition Clause" in the LTD Plan. (J.A. at 614.) As such, the district court concluded that MetLife correctly applied the LTD Plan's pre-existing condition limitation to Wilson's claim for benefits. Wilson timely noted an appeal.[5]

## II.

We review de novo the district court's decision granting summary judgment to MetLife, "applying the same standards that the district court employed." Evans v. Metropolitan Life Ins. Co., 358 F.3d 307, 310 (4th Cir. 2004). The LTD Plan gives MetLife "discretionary authority . . . to determine eligibility for and entitlement to [LTD] Plan benefits" (J.A. at 605); however, MetLife's capacity as the insurer of the LTD Plan creates a conflict of interest. Evans, 358 F.3d at 311. We therefore review

---

[5]Although MetLife filed a counterclaim to recover the $35,459.50 that had been paid to Wilson as LTD benefits, the district court entered judgment in favor of Wilson on MetLife's counterclaim, and MetLife does not appeal that decision.

8

MetLife's denial of benefits under a modified abuse of discretion standard, in which we consider MetLife's conflict in determining whether MetLife abused its discretion in denying benefits to Wilson. Id. The touchstone for properly-exercised discretion is whether a plan administrator reached a reasonable decision after a deliberate and principled reasoning process and whether that decision is supported by substantial evidence. Id.

## A.

Wilson contends that the district court erred in treating the Booklet as a unitary document and concluding that the definition of "Pre-Existing Condition" found in the STD section applied to the LTD section. She argues that the Booklet comprises two distinct plans -- the STD Plan and the LTD Plan -- and that therefore it is improper to import the STD Plan's definition of "Pre-Existing Condition" into the LTD Plan.[6] Assuming that Wilson is correct

---

[6]Wilson supports her argument that the Booklet comprises two distinct and self-contained plans by pointing to the fact that the STD Plan and LTD Plan sections of the Booklet each possessed the accouterments of a distinct SPD. Her argument before us, however, contradicts what she argued to the district court. See Resp. in Opp'n to Def.'s Mot. Summ. J., Wilson v. Metropolitan Life Ins. Co., No. 5:01-CV-384 (E.D.N.C. 2002) ("[Wilson] . . . was issued an SPD covering both the STD Plan and the LTD Plan . . . ." (emphases added)). Nevertheless, we need not address whether the Booklet included one unitary Plan or two distinct Plans, because the proper mode of analysis is to compare Wilson's flawed Booklet with MetLife's accurate Booklet to determine if there is a conflict between the two Booklets and if Wilson relied on, or was prejudiced by, her Booklet.

that the Booklet comprises two separate and distinct Plans, we nevertheless conclude that MetLife did not abuse its discretion in terminating her benefits because MetLife properly based its decision on the terms of the LTD Plan as found in the accurate Booklet.

B.

As described above, Wilson received a flawed Booklet, and MetLife based its decision to terminate Wilson's disability benefits on its LTD Plan, which contained the definition of "Pre-Existing Condition." We first examine whether MetLife abused its discretion in applying the definition of "Pre-Existing Condition" contained in its LTD Plan when Wilson's LTD Plan did not contain that definition.

Wilson's flawed version of the LTD Plan would control over MetLife's accurate version if there was a conflict between the two and Wilson relied on, or was prejudiced by, her version. Hendricks v. Cent. Reserve Life Ins. Co., 39 F.3d 507, 511 (4th Cir. 1994). If there is no conflict between the documents, we need not analyze reliance or prejudice. Martin v. Blue Cross & Blue Shield of Virginia, 115 F.3 1201, 1204 (4th Cir. 1997). To determine whether Wilson's LTD Plan conflicts with MetLife's Plan, we examine whether "the generally accepted definition[]" of "Pre-Existing Condition" "differ[s] substantially from the definition[] of th[at] term[]

10

given in" MetLife's LTD Plan.  Hendricks, 39 F.3d at 512.

According to generally accepted definitions, "pre-exist" means "to exist previously or before (another person or thing)," and "condition" means "[a] state of health" or "an illness [or] ailment."  Webster's New World Collegiate Dictionary 290, 1062 (3d ed. 1997).  Therefore, "Pre-Existing Condition" is commonly understood simply as an illness or ailment that existed before a certain time.  Although MetLife's LTD Plan has a more precise definition of "Pre-Existing Condition," it is "not so different from [the] common understanding[] of the term[] that [it] can be thought to conflict with t[hat] understanding."  Hendricks, 39 F.3d at 512 (emphasis added).

Moreover, Wilson cannot show reliance on her version of the Booklet or prejudice from MetLife's application of its definition of "Pre-Existing Condition."  First, the definition applied by MetLife is actually more favorable to Wilson because it limits "condition" to a sickness or injury for which medical advice or treatment was obtained and "pre-existing" to a three month period of time before she became eligible for LTD Plan benefits.  The generally accepted definition of "Pre-Existing Condition" is not that limited and would include any illness -- treated or untreated -- that existed at any time prior to a particular temporal

11

reference point.[7]  Second, applying the generally accepted definition, we still would have to identify a temporal reference point for determining whether a medical condition is pre-existing. In Wilson's case, there are two logical temporal reference points: pre-existing could refer -- as Wilson contends -- to the time before she enrolled in the LTD Plan in August 1996, or it could refer to the time before she became eligible for LTD benefits.  But from either reference point, Wilson's condition was pre-existing because her medical records indicate that her ailment -- the joint pain for which she sought treatment at Duke in January 1997 -- began a year earlier following her fall down stairs.

Because Wilson's version of the Booklet is not in conflict with MetLife's, and, in any event, because Wilson cannot show that she relied on, or was prejudiced by, her version of the Booklet, MetLife did not abuse its discretion by applying the correct

---

[7]Wilson proposes that "Pre-Existing Condition" should mean a condition "for which [she] sought medical advice, care or treatment during the period prior to her employment with BDM [Federal]." (Appellant's Br. at 25.)  As discussed, however, the generally accepted definition of "Pre-Existing Condition" includes all illnesses or ailments, regardless of whether medical treatment was sought.  The effect of Wilson's proposed definition is that she gets to keep the portion of the LTD Plan's definition that benefits her -- the more limited definition of "condition" -- while jettisoning the portion that does not -- the point of measurement for "pre-existing."  We therefore reject her proposed definition because it is not the same as the generally accepted definition of "Pre-Existing Condition."

12

version of the LTD Plan and accompanying definition of "Pre-Existing Condition."

## C.

Wilson also contends that MetLife abused its discretion by terminating her benefits based on the same medical information that was available at the time of its initial decision to grant her benefits. Relying on one of the criteria for reasonableness that we articulated in Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342 (4th Cir. 2000), Wilson contends that MetLife did not consistently interpret the provisions of the LTD Plan because it first concluded that she did not have a pre-existing condition but then later determined that she did.

We do not believe that MetLife inconsistently interpreted the LTD Plan. Nothing in the record before us suggests that MetLife has previously interpreted "Pre-Existing Condition" to mean something other than "a Sickness or Injury for which [the employee] received Medical . . . Treatment" during the three-month period preceding an employees's eligibility date for benefits. (J.A. at 115.) Instead, MetLife initially failed to apply the "Pre-Existing Condition Limitation" to Wilson's claim for LTD benefits, but it is not estopped from enforcing that provision of the LTD Plan simply because of its initial failure to do so. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 60 (4th Cir. 1992) (holding that

13

estoppel principles do not bind a plan administrator to prior representations of coverage).  Although it is certainly preferable that a plan administrator reach in the first instance a correct decision to grant or deny benefits, we do not believe that a plan administrator abuses its discretion by terminating benefits after a review of available information shows that the initial grant of benefits was contrary to the terms of the plan.  See Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 274 (5th Cir. 2005) (holding that a plan fiduciary does not need to meet a higher standard of proof to terminate benefits once granted than is needed to sustain a denial of benefits in the first instance), cert. denied, 125 S. Ct. 2941 (2005).  Otherwise, plan administrators would be severely constrained from terminating benefits that were erroneously granted, resulting in plan administrators becoming more hesitant about initially granting benefits lest they be stuck with a wrong decision.  Id. (noting the "chilling effect" of requiring a heightened standard of proof to terminate erroneously-granted benefits).  We therefore conclude that MetLife did not abuse its discretion in correcting its application of the LTD Plan to Wilson's claim and terminating her LTD benefits.


III.

We conclude that MetLife did not abuse its discretion in determining that Wilson's disability fell within the pre-existing

14

condition limitation of the LTD Plan and that MetLife did not abuse its discretion in terminating her benefits after it initially granted them.  We therefore affirm the district court's grant of summary judgment to MetLife.

AFFIRMED