**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1602**

———————

DOROTHY GARNER,

        Plaintiff – Appellee,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND ACTIVE PLAN,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at
Greensboro.  Catherine C. Eagles, District Judge.  (1:20-cv-00471-CCE-LPA)

———————

Argued:  March 10, 2022                    Decided:  April 20, 2022

———————

Before WILKINSON and DIAZ, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Diaz
and Senior Judge Floyd joined.

———————

Francis Joseph Carey, CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
HEALTH AND WELFARE FUND, Chicago, Illinois, for Appellant.  M. Leila Louzri,
FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellee.

———————

WILKINSON, Circuit Judge:

Dorothy Garner filed suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, after Central States denied her claim for benefits following spinal surgery. The district court granted summary judgment to Garner, concluding that Central States had abused its discretion by relying on a physician's review of Garner's surgery that took place without the benefit of relevant medical records. We agree with the district court that the plan trustees abused their discretion and we affirm.

I.

For years, Dorothy Garner suffered from back and neck pain. She performed postural exercises such as yoga on the advice of a neurosurgeon, Dr. Henry Elsner, and occasionally made use of a pain medication, hydrocodone. Nevertheless, her pain worsened and, following Dr. Elsner's recommendation, she had an MRI taken in January 2019. Upon reviewing the MRI, Dr. Elsner concluded that surgery would help relieve Garner's symptoms and on February 5, 2019, he operated on her at Moses H. Cone Memorial Hospital in Greensboro, North Carolina.

Garner's husband worked for United Parcel Service, Inc., and Garner received health insurance coverage under his plan, Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan. Nonetheless, shortly after her surgery, Garner received a letter from Central States, denying her claim and leaving her responsible for the approximately $90,000 bill. Central States made this determination pursuant to a provision of the plan stating that covered individuals "shall not be entitled to payment of any charges

2

for care, treatment, services, or supplies which are not medically necessary or are not generally accepted by the medical community as Standard Medical Care, Treatment, Services or Supplies." J.A. 42. As Central States found that Garner's surgery was not "medically necessary," it concluded that Garner was not entitled to payment.

Central States came to this conclusion based on an independent medical review (IMR) of Garner's claim, conducted by Dr. Francesco M. Serafini, a physician board-certified in general surgery. But the records that Central States provided Dr. Serafini for his IMR failed to contain either the official MRI report that had led Dr. Elsner to recommend surgery or the office notes from Dr. Elsner that explained this recommendation. Without access to these missing documents, Dr. Serafini concluded that there was no basis in the records provided to justify Garner's surgery, and this conclusion formed the basis for Central States' denial letter.

Both Garner and Cone Hospital filed an internal appeal, as authorized by the plan, and Central States conducted another IMR of Garner's claim, now by Dr. Brad A. Ward, a physician board-certified in neurological surgery. Unlike Dr. Serafini, Dr. Ward had full access to Garner's medical records, including the MRI and the office notes. But Dr. Ward also concluded that the surgery was not medically necessary, relying in part on a lack of documented abnormalities on a neurologic exam and in part on the fact that Garner had not taken "any conservative measures other than medication." J.A. 100.

Following Dr. Ward's IMR, Central States denied Garner's appeal. After a second appeal from Garner and Cone Hospital, the plan trustees reviewed Garner's claim and made a final decision to deny benefits. In doing so, the trustees relied on the opinions of both Dr.

3

Serafini and Dr. Ward, as well as "the absence of documentation of any abnormalities on the neurologic exam" and "a lack of documentation of conservative treatment." J.A. 75.

After receiving the final decision from the trustees, Garner filed suit under ERISA in federal district court to recover the benefits allegedly due to her under the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Both parties moved for summary judgment and the district court granted Garner's motion.

The district court determined that Central States had not engaged in a "reasoned and principled" decision-making process. J.A. 62. Most importantly, Central States had failed to provide Dr. Serafini with the critically important MRI records that documented Garner's need for surgery yet the plan trustees nonetheless had relied on Dr. Serafini's IMR in denying Garner's claim. In addition, the district court noted that nothing in the plan required covered individuals to exhaust conservative treatment options before undergoing surgery, and that it was undisputed that Garner had unsuccessfully tried using postural exercises to relieve her pain. The district court entered final judgment for Garner, concluding that she was "entitled to health insurance benefits covering her February 5, 2019 surgery." J.A. 66. Central States timely appealed.

## II.

We review grants of summary judgment de novo, applying the same standards employed by the district court. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997). Guided by principles of trust law, the Supreme Court has made clear that ERISA plans are

4

treated as contractual documents to be interpreted by the courts "without deferring to either party's interpretation." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989).

Here, however, as is often the case, the text of the plan vests the trustees with "discretionary and final authority" in making benefits determinations. J.A. 43. In such circumstances, "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." *Firestone*, 489 U.S. at 111 (quoting Restatement (Second) of Trusts § 187 (1959)). The question before us, then, is whether the trustees abused this discretion in denying benefits. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342 (4th Cir. 2000). We conclude that they did.

The abuse-of-discretion standard is a deferential one and the decision of the plan trustees will not be disturbed "if it is reasonable, even if we would have come to a different conclusion independently." *Ellis v. Metro. Life Ins. Co.*, 358 F.3d 307, 310–11 (4th Cir. 2004). Yet the prism of deference does not blind us to trustee decisions that are made arbitrarily or unreasonably. Even under abuse-of-discretion review, we will not uphold the trustees' decision unless it was "the result of a deliberate, principled reasoning process" and unless it was "supported by substantial evidence." *Id.* at 311.

A.

Primarily, the trustees erred in their treatment of Dr. Serafini's IMR. As the district court properly noted, Central States utterly failed to disclose to Dr. Serafini the medical records that would have been pertinent to his analysis, including both the MRI that Garner had taken in January 2019 and Dr. Elsner's notes from Garner's visits to his office. These

5

documents were critical: the MRI established the underlying medical basis for Garner's surgery, while Dr. Elsner's office notes explained why he chose to recommend that surgery. Without such records, Dr. Serafini quite naturally concluded that the surgery was not medically necessary, explicitly citing the absence of an "official MRI report" or any documentation concerning "the severity of the symptoms" or whether they impacted Garner's "daily activities." J.A. 116. Yet upon receiving Dr. Serafini's report, Central States did not follow up with him or provide him with this relevant documentation. Instead, it denied Garner's claim for benefits.

To say the least, this was not a "reasoned and principled" decisionmaking process, nor were the "materials considered to make the decision" adequate. *Booth*, 201 F.3d at 342. And we cannot see how it would be consistent with the "purposes and goals of the plan," *id.*, for Central States to deny benefits on the basis of inadequate documentation after Central States itself failed to provide that documentation. Whether understood in light of *Booth*, or just as a matter of common sense, it is clear that Central States did not give due consideration to Garner's claim.

To be sure, we do not conclude that Central States acted in bad faith or deliberately withheld documentation. But intent aside, Central States owes plan participants a "deliberate, principled reasoning process," *Ellis*, 358 F.3d at 311, and Garner manifestly did not receive this process. Plan trustees are entirely free to rely on the independence and expertise of unaffiliated doctors in making benefits determinations; indeed, they are encouraged to do so. But in order for those doctors to provide reliable information to the plan, they naturally must receive from the plan those medical records necessary to

6

formulate an informed opinion. None of the virtues of an independent evaluation are present when the evaluator is denied the very evidence necessary to come to a reasoned judgment.

In response, Central States contends that Dr. Serafini's IMR was only a part of its review process. In particular, following the appeal from Garner and Cone Hospital, Central States conducted a second IMR, this time by Dr. Ward. And it is undisputed that Dr. Ward received all the relevant documentation. So, Central States argues, any problem with Dr. Serafini's IMR was ultimately cured by the trustees' reliance on Dr. Ward's subsequent IMR.

The record refutes this argument, as the trustees repeatedly indicated that they were relying on *both* Dr. Ward's *and* Dr. Serafini's IMRs. The minutes of the trustee review state that Garner's initial appeal was denied "on the basis that [Garner's] spinal surgery was not medically necessary based on two (2) independent medical reviews." J.A. 74. And in their final benefits determination, the trustees relied on "the opinions of an independent physician Board Certified in General Surgery and another independent physician Board Certified in Neurological Surgery," i.e., Dr. Serafini and Dr. Ward. J.A. 75. At no point did the trustees state that they were relying solely on Dr. Ward's IMR, nor did they even allude to the deficiencies in Dr. Serafini's IMR. Had the plan trustees truly sought an informed judgment from Dr. Serafini, they could easily have sent him the full documentation and asked him to re-evaluate Garner's surgery. Having chosen not to do so, the trustees could hardly come to a reasoned determination while continuing to rely on Dr. Serafini's IMR.

7

B.

We also note a second problem with the way that Central States handled Garner's claim. Both in resolving Garner's initial appeal, and in the final determination by the trustees, Central States emphasized Dr. Ward's finding that Garner had not demonstrated conservative medical treatment prior to her surgery, except for medication. But this was inaccurate, since the record shows that Garner had tried postural exercises such as yoga without relief. *See* J.A. 140, 142. Indeed, Dr. Elsner specifically recommended the MRI "[i]n light of the problems that [Garner] has been having despite her efforts at conservative treatment over the past several months." J.A. 140.

Furthermore, the trustees erred to the extent that they imposed a requirement of conservative treatment as a precondition to finding that Garner's surgery was medically necessary. The presence or absence of such treatment, of course, may be a useful factor in determining whether a given procedure is necessary. It will generally be prudent to consider less invasive or less costly measures before undertaking more serious procedures such as surgery. After all, a chef may be well-advised to try a pinch of seasoning before reworking the entire dish. But while a lack of conservative treatment may be a useful factor as part of a holistic inquiry, that does not justify requiring such treatment as an absolute condition. Sometimes it is readily apparent that no amount of conservative treatment would alleviate a patient's pain or render surgery unnecessary. And to impose a rigid requirement of conservative treatment would be effectively to add a new term to the plan, a term for which Garner did not bargain, and about which she lacked any notice. *See Jones v. Metro.*

8

*Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) ("Discretion to interpret a plan, however, does not include the authority to add eligibility requirements to the plan.").

We do not dispute that the trustees enjoy a good measure of discretion in determining what is "medically necessary" under the terms of the plan. All the same, they may not abuse that discretion, whether by employing a process that leads to unreasoned conclusions or by affixing extratextual requirements before awarding benefits. For these reasons, we agree with the district court that the trustees abused their discretion in denying Garner's claim.

III.

Finally, we consider the appropriate remedy. Here, instead of remanding Garner's claim to the plan trustees for reconsideration, the district court awarded benefits outright to Garner. *See* J.A. 66 (entering judgment that Garner "is entitled to health insurance benefits covering her February 5, 2019 surgery"). We review "for abuse of discretion a district court's decision regarding whether to remand a case to an ERISA plan administrator." *Helton v. AT & T Inc.*, 709 F.3d 343, 359 (4th Cir. 2013). And while remand to the plan trustees often will be the most appropriate remedy in ERISA benefits cases, we conclude on these particular facts that the district court did not abuse its discretion by awarding benefits outright.

Where a plan trustee has simply "lacked adequate evidence," we have long held that "the proper course [is] to remand to the trustees for a new determination," *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985), a remedy that we have also endorsed

9

for procedural violations of ERISA, *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 251 (4th Cir. 2022). But "remand is not required" in all instances, particularly where "evidence shows that the administrator abused its discretion." *Helton*, 709 F.3d at 360. And we have consistently noted that "in cases where the fiduciary has committed a clear error or has acted in bad faith, 'a reversal, rather than a remand would be within the discretion of the district court.'" *Bernstein v. Capital Care, Inc.*, 70 F.3d 783, 788 n.6 (4th Cir. 1995) (quoting *Berry*, 761 F.2d at 1007 n.3).

We reiterate that we pass no judgment on Central States' intent nor do we come to any conclusion of bad faith. But this is not a case simply of inadequate evidence; indeed, Central States had complete access to Garner's relevant medical records. Rather, the issue is that the plan trustees, even with the benefit of these records, repeatedly failed to handle Garner's claim in a sensitive and fair-minded manner. As others have noted, "when the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant, the claim should not be returned to the trustees." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1075 (2d Cir. 1995) (Calabresi, J., concurring in part and dissenting in part).

Here, Central States had no fewer than three opportunities to give Garner's claim the reasoned consideration that it deserved. At the outset, Central States entirely failed to send Dr. Serafini the very documentation that provided the basis for Garner's surgery. Then, on appeal, Central States apparently imposed an extratextual requirement that Garner undertake conservative measures before resorting to surgery—notwithstanding the record evidence that she had taken such measures. And when the trustees made their final

10

decision, they combined both of these mistakes by expressly relying on Dr. Serafini's IMR while again citing the supposed absence of any conservative measures.

It would neither encourage the careful and efficient resolution of benefits claims, nor would it be fair to Garner, to permit Central States a fourth opportunity. Three strikes are enough. Since Central States has already had ample chance to review Garner's claim, we conclude that a remand would be inappropriate and that the district court therefore did not abuse its discretion by awarding benefits outright.

*AFFIRMED*