**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEAL S. SMITH,

*Plaintiff-Appellee,*

v.

CONTINENTAL CASUALTY COMPANY,
*Defendant-Appellant.*

No. 03-2105

NEAL S. SMITH,

*Plaintiff-Appellee,*

v.

CONTINENTAL CASUALTY COMPANY,
*Defendant-Appellant.*

No. 03-2435

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CA-02-3049-WDQ)

Argued: May 4, 2004

Decided: May 28, 2004

Before WILLIAMS and TRAXLER, Circuit Judges,
and Pasco M. BOWMAN, II, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Vacated and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Traxler and Senior Judge Bowman
joined.

**COUNSEL**

**ARGUED:** Bryan David Bolton, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellant. Scott Bertram Elkind, ELKIND & SHEA, Silver Spring, Maryland, for Appellee. **ON BRIEF:** Michael R. McCann, Hisham M. Amin, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellant. Stephen F. Shea, ELKIND & SHEA, Silver Spring, Maryland, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Continental Casualty Company appeals the district court's grant of summary judgment to Neal S. Smith on his claim for wrongful denial of benefits under an ERISA plan. Because the district court relied on a Social Security ruling dealing with subjective complaints of pain that does not apply to this ERISA benefits plan, we vacate the grant of summary judgment for Smith. Given our holding on the benefits issue, we vacate the district court's award of attorneys' fees to Smith.

I.

Smith was a vice president of sales in the floor covering department at J.J. Haines & Co., Inc., a wholesale distributor, where he was in charge of carpet, ceramics and wood. As part of his job, he was required to "travel independently up to 60% of the time within the [d]omestic United States to attend various meetings with other personnel and public" and "to visit suppliers and customers." (J.A. at 172.) According to his job description, Smith was "frequently required to sit" and "required to stand and walk." (J.A. at 172.) His job also required "[e]xtensive automobile travel . . . to visit suppliers and customers." (J.A. at 172.) Smith's geographical territory extended from Pennsylvania to South Carolina.

Smith has had a long history of back problems. Between March 14, 1997 and May 3, 2000, Smith had three surgeries performed on his lower back. Smith experienced some temporary improvement follow-

ing the surgeries and was even able to travel during the late fall of 2000.[1] On January 14, 2001, however, Smith was watching a football game, and when he jumped up to celebrate a touchdown, "his back went out again." Smith indicated that since January 2001, he has been unable to stand or walk for more than three to five minutes at a time before he has to lie down.

On February 23, 2001, Smith filed a claim for long term disability benefits under the ERISA plan (the Plan) that Continental Casualty administered for his employer.[2] Smith's claim was based on his degenerative disc disease and joint disease of the lumbar spine.

The Plan provides for benefits for all full-time officers, managers, and administrators. Continental Casualty concedes that Smith is a covered person. Under the Plan, a covered person is "Disabled" or has a "Disability," and thus, is entitled to benefits, if he meets the "Occupation Qualifier or the Earnings Qualifier." (J.A. at 134.) The Earnings Qualifier is not at issue in this case. The Occupation Qualifier provides:

> *Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

---

[1]According to Continental Casualty's denial of benefits, because of his back problems, Smith "was allowed to travel three times a week, which incorporated a combination of air and car travel." (J.A. at 251.)

[2]On May 11, 2001, Smith filed a claim for Social Security benefits, which was granted on February 25, 2002, with a disability onset date of February 23, 2001. Continental Casualty's "disability determination is independent of the Social Security Administration's ruling." (J.A. at 251; *cf. Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 275 (4th Cir. 2002).)

(J.A. at 134.) The Plan defines "Material and Substantial Duties" as "the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered." (J.A. at 146.)

The Plan also provides that "[t]he policy does not cover any loss caused by, contributed to, or resulting from: . . . *Disability* beyond 24 months . . . if it is due to a diagnosed condition which manifests itself primarily with *Self-Reported Symptom(s)*. (J.A. at 139.) The Plan defines "*Self-Reported Symptoms*" as "the symptoms of which *You* tell *Your Doctor*, and are not verifiable or quantifiable using tests, procedures, or clinical examinations *Generally Accepted in the Practice of Medicine*. Examples of these manifestations include the following, but are not limited to: fatigue, pain, headaches, stiffness, soreness, tinnitus (ringing in the ears), dizziness, numbness, or loss of energy." (J.A. at 146.)

In the section entitled "Proof of Disability," the Plan provides that

> The following items, supplied at *Your* expense, must be a part of *Your* proof of loss. Failure to do so may delay, suspend or terminate *Your* benefits:
>
> 1. The date *Your Disability* began;
>
> 2. The cause of *Your Disability*;
>
> 3. The prognosis of *Your Disability*; . . .
>
> 5. Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).
>
> 6. The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.

(J.A. at 142.)

Continental Casualty issued its first denial of Smith's claim on April 16, 2001. Smith filed an administrative appeal, and after Smith submitted additional information, Continental Casualty's Appeals Committee remanded Smith's file to the Claims Unit for further review and investigation. On November 21, 2001, the Claims Unit once again denied Smith's claim. Smith again appealed. On May 2, 2002, Continental Casualty issued its final denial of Smith's claim. In this denial, Continental Casualty stated that

> The information presented does show degenerative disc disease, bilateral laminectomies at L3-4 and 4-5, spinal stenosis and subsequent failed back syndrome. From 1997 to 2000, Mr. Smith had underwent [sic] a total of three back surgeries as follows: 1) March 14, 1997, bilateral lumbar laminectomy; 2) September 28, 1998, L2 through L5 lumbar laminectomy with fusion; and 3) May 3, 2000, L4-L5, L5-S1 hemilaminectomy and forminotomy.

(J.A. at 250.) Continental Casualty also acknowledged that the medical review performed by Dr. Soriano, who was hired by Continental Casualty, indicated that Smith "would need to avoid sitting or standing for prolonged periods of time over 1-2 hours." (J.A. at 253.) After listing all of the medical evidence, however, Continental Casualty concluded that

> the physical findings show full muscle strength, no atrophy and no neurological deficits. . . .
>
> . . . We can appreciate that Mr. Smith may have some back pain and difficulties associated with his longstanding back pain history and surgeries, but the information presented does not support a functional loss that would preclude him from performing the full duties of his regular occupation as of February 23, 2001 . . . . The primary limiting factor affecting Mr. Smith is his pain complaints, which are disproportionate when compared to the diagnostic and physical findings presented.

(J.A. at 253.)

On September 13, 2002, Smith filed a complaint in the United States District Court for the District of Maryland for wrongful denial of his claim for long-term disability benefits. Smith sought back benefits, plus interest, future benefits, reinstatement of his term life insurance, "waiver of premium" coverage, and reasonable attorneys' fees.

Both parties moved for summary judgment. The district court granted summary judgment in part for Smith, awarding back benefits with interest, and future benefits. The district court's decision relied heavily on its adoption of a Social Security Ruling regarding subjective evidence of pain. Given its ruling on the benefits issue, the district court remanded the waiver of premium issue to Continental Casualty. The district court also granted Smith's attorneys' fee petition in total. This appeal followed.

## II.

"We review the entry of summary judgment in favor of Appellees de novo." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, "the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001).

"It is well-established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002) " 'Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion.' " *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (quoting Restatement (Second) of Trusts § 187 (1959)). "Thus, a trustee's discretionary decision will not be disturbed if reasonable, even if the court itself

would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). "Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks omitted). It is undisputed that Continental Casualty possessed discretionary authority to determine Smith's entitlement to benefits. Accordingly, we review the denial of benefits for an abuse of discretion.

Where, however, an administrator or fiduciary with discretion is operating under a conflict of interest such that its decision to award or deny benefits impacts its own financial interests, as here, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Bernstein*, 70 F.3d at 787. In such a situation, we modify the abuse of discretion standard, as we held in *Doe v. Group Hospitalization and Medical Services*, 3 F.3d 80 (4th Cir. 1993):

> We hold that when a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Doe*, 3 F.3d at 87. "[I]n no case does the court deviate from the abuse of discretion standard. Instead, the court modifies that abuse of discretion standard according to a sliding scale. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997). The district court correctly recognized that the modified abuse of discretion standard was

appropriate because Continental Casualty, directly and indirectly, both insures and administers the Plan.

With this standard in mind, we consider Continental Casualty's argument that the district court erred by importing Social Security Ruling ("SSR") 90-1p into the ERISA context. SSR 90-1p,[3] which provided the Fourth Circuit's standard for the evaluation of pain for purposes of Social Security disability determinations, stated that

> Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p; *Hyatt v. Sullivan*, 899 F.2d 329 (4th Cir. 1990). According to the district court,

> The evidentiary assessment of pain cannot reasonably differ whether a claimant seeks disability benefits under a pri-

---

[3]After promulgating SSR 90-1p, the Social Security Administration issued final regulations incorporating these same standards for evaluating pain. *See* 56 Fed. Reg. 57928-01 (1991). Accordingly, SSR 90-1p has since been superceded. *See* SSR 95-5p. Because the district court used the language from SSR 90-1p, which itself was drawn from our decision in *Hyatt v. Sullivan*, 899 F.2d 329 (4th Cir. 1990), the subsequent history of SSR 90-1p has no bearing on our decision today.

> vate plan of insurance or under the public scheme of social security. Proof is proof.

(J.A. at 19.) Thus, the district court held, Smith's evidence must be considered in light of SSR 90-1p. Applying SSR 90-1p, the district court held that "[b]ecause a claimant need not present clinical or diagnostic evidence to support the severity of pain, a plan administrator cannot discount self-reports of disabling pain solely because the objective medical evidence does not fully support them." (J.A. at 20.) Although we can understand the district court's perspective, this holding was error under the rationale of the recent Supreme Court decision in *Black & Decker Disability Plan v. Nord*, 123 S. Ct. 1965 (2003).

In *Black & Decker*, the Supreme Court held that the "treating physician" rule adopted by the Commissioner of Social Security did not apply to disability determinations under employee benefit plans covered by ERISA. The Court reversed the Ninth Circuit, which had held that the "treating physician" rule should apply to ERISA plans. The Ninth Circuit had held "that its 'reasons ha[d] to do with common sense as well as consistency in [judicial] review of disability determinations where benefits are protected by federal law.' 'Just as in the Social Security context,' the [Ninth Circuit] court observed, 'the disputed issue in ERISA disability determinations concerns whether the facts of the beneficiary's case entitle him to benefits.'" *Id.* at 1969 (citations omitted). The Court held that the Ninth Circuit erred in equating the ERISA and Social Security regimes. *Id.* at 1970.

The district court in this case made the same error that the Ninth Circuit made in *Black & Decker* by equating the determination of disability under the Social Security regime with the determination of disability under the ERISA plan at issue. In *Black & Decker*, the Court recognized that "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Id.* at 1970. The Court noted that "the most recent version of the [ERISA] regulations, which installs no treating physician rule, issued more than nine years after the Social Security Administration codified a treating physician rule in that agency's regulations." *Id.* "Finally, and of prime importance, critical differences between the Social Security disability program and

ERISA benefit plans caution against importing a treating physician rule from the former area into the latter." *Id.* at 1971. As the Court recognized,

> The Social Security Act creates a nationwide benefits program funded by Federal Insurance Contributions Act payments, see 26 U.S.C. §§ 3101(a), 3111(a), and superintended by the Commissioner of Social Security. . . . Presumptions employed in the Commissioner's regulations "grow out of the need to administer a large benefits system efficiently." . . . Along with other regulations, the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges.

> In contrast to the obligatory, nationwide Social Security program, "[n]othing in ERISA requires employers to establish employee benefits plans. *Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.*" *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 . . . (1996). Rather, employers have large leeway to design disability and other welfare plans as they see fit. In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. "*[T]he validity of a claim to benefits under an ERISA plan," on the other hand, "is likely to turn," in large part, "on the interpretation of terms in the plan at issue.*" *Firestone Tire*, 489 U.S., at 115 . . . . It is the Secretary of Labor's view that ERISA is best served by "preserv[ing] the greatest flexibility possible for . . . operating claims processing systems consistent with the prudent administration of a plan." Department of Labor, Employee Benefits Security Administration, http://www.dol.gov/ebsa/faqs/faq_ claims_proc_ reg.html, Question B-4 (as visited May 6, 2003) (available in Clerk of Court's case file). Deference is due that view.

*Id.* at 1971-72 (emphases added).

The Supreme Court's reasoning is equally applicable to the question of whether to import SSR 90-1p into the ERISA area. As with

the treating physician rule at issue in *Black & Decker*, the most recent version of the ERISA regulations was enacted long after SSR 90-1p was adopted, and the ERISA regulations do not reference the pain ruling. Moreover, ERISA does not mandate what benefits an employer must offer. ERISA benefits are a matter of contract. Accordingly, what qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan — the benefits provided depend entirely on the language in the plan. Thus, if the plan language provided that pain could never support a finding of disability (which, we are quick to note, is not the case here), then the plan language would control. Because the district court's grant of summary judgment rested entirely on its importation of SSR 90-1p into the ERISA context, we vacate the grant of summary judgment for Smith on the benefits issue and remand to the district court for reconsideration. Given this holding, we vacate the award of attorneys' fees for Smith.

On remand, the district court should consider whether Continental Casualty abused its discretion in failing to apply the language of the Plan related to Self-Reported Symptoms. We note that Continental Casualty's denial of benefits admits that Smith has some objective medical findings supporting his disability. Specifically, Continental Casualty found that "[t]he information presented *does show* degenerative disc disease, bilateral laminectomies at L3-4 and 4-5, spinal stenosis and subsequent failed back syndrome" and that "Mr. Smith may have some back pain and difficulties associated with his longstanding back pain history and surgeries." (J.A. at 250, 253 (emphasis added).) Continental Casualty denied benefits because it concluded that there were no *additional* objective medical findings, such as neurological deficits, muscle atrophy, or a decrease in muscle strength, that supported the functional loss reported by Smith and his doctors. Thus, there are *some* objective medical findings, Continental Casualty merely concluded that there were not *enough* objective medical findings. As Continental Casualty stated, "[t]he primary limiting factor affecting Mr. Smith is his pain complaints, which are *disproportionate* when compared to the diagnostic and physical findings presented." (J.A. at 253 (emphasis added).)

In coming to this conclusion, Continental Casualty apparently ignored the Plan provision that indicates that limited benefits will be

provided for a disability "due to a diagnosed condition which manifests itself primarily with *Self-Reported Symptom(s)*." (J.A. at 139.) The Plan defines "Self-Reported Symptoms" as "the symptoms of which *You* tell *Your Doctor*, and are not verifiable or quantifiable using tests, procedures, or clinical examinations *Generally Accepted in the Practice of Medicine*. Examples of these manifestations include . . . pain." (J.A. at 146.) If a disability "manifests itself primarily with Self-Reported Symptom(s)," (J.A. at 139), it seems that the self-reported symptoms frequently, if not invariably, will be "disproportionate when compared to the diagnostic and physical findings presented." (J.A. at 253.) If the district court concludes that Continental Casualty failed to consider this Plan language, it can remand the case to Continental Casualty for further administrative review. *Cf. Evans v. Metropolitan Life Ins. Co.*, 358 F.3d 307, 312 (4th Cir. 2004) ("Because MetLife abused its discretion . . ., we vacate the judgment of the district court and direct the district court to remand this case for further administrative review by MetLife consistent with this opinion.").

The district court may also choose to consider whether, apart from the Plan language regarding Self-Reported Symptoms, Continental Casualty's denial of benefits was supported by substantial evidence. For example, the doctor engaged by Continental Casualty to review Smith's file concluded that because of his three back surgeries, Smith "would need to avoid sitting or standing for prolonged periods of time over 1-2 hours."[4] (J.A. at 253.) Continental Casualty relied on this statement in denying benefits as evidence that Smith could perform the material and substantial duties of his regular occupation. A review of Smith's job description and responsibilities reveals that he is vice president of sales for a territory that extends from Pennsylvania to South Carolina and that extensive automobile travel is required to visit suppliers and customers within this territory. Although Smith may have some control over his travel due to his position in upper management, he has no control over the length of time that it takes to drive from Pennsylvania to South Carolina — for example, a one-way trip from Harrisburg, PA to Columbia, SC covers over 600 miles and takes considerably longer than 1-2 hours.

---

[4]Smith, we note, claims that he cannot sit or stand for more than three to five minutes.

## III.

For the foregoing reasons, we vacate the grant of summary judgment for Smith on the benefits issue and vacate the award of attorneys' fees to Smith. We remand the case for proceedings consistent with this opinion.

*VACATED AND REMANDED*