Certiorari dismissed, July 30, 2007

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CAROLINA CARE PLAN INCORPORATED,
*Defendant-Appellant,*

v.

CAROLYN L. MCKENZIE,
*Plaintiff-Appellee.*

No. 05-2060

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Senior District Judge.
(CA-03-2908-2)

Argued: September 20, 2006

Decided: October 23, 2006

Before MOTZ and GREGORY, Circuit Judges, and
Richard L. VOORHEES, United States District Judge
for the Western District of North Carolina,
sitting by designation.

Affirmed in part and reversed in part by published opinion. Judge
Motz wrote the opinion, in which Judge Gregory and Judge Voorhees
joined.

**COUNSEL**

Jeffrey Stuart Patterson, NELSON, MULLINS, RILEY & SCAR-
BOROUGH, L.L.P., Columbia, South Carolina, for Appellant.
Charles M. Gibson, Jr., Charleston, South Carolina, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this ERISA case the district court concluded that the plan administrator abused its discretion by denying coverage for a cochlear implant. The court then awarded attorneys' fees to the claimant. For the reasons that follow, we affirm the order directing the administrator to provide coverage for the cochlear implant, but reverse the award of attorneys' fees.

I.

Carolyn L. McKenzie suffers from "a profound sensorineural hearing loss in both ears" that "[h]earing aids do not address." Accordingly, McKenzie sought authorization for a cochlear implant under her employer's ERISA plan, which is contained in a Carolina Care Plan, Inc. ("CCP") insurance policy that CCP drafted and administers.

McKenzie's physician, Dr. Paul Lambert, III, the Chair of the Department of Otolaryngology at the Medical University of South Carolina, wrote to CCP on several occasions in support of McKenzie's application for authorization for the implant. Dr. Lambert explained that "[t]he only medical treatment for [McKenzie's] condition is implantation with a cochlear prosthesis." *Id.*

A cochlear implant is a pair of components that "replace[ ] the function of a permanently inoperative [cochlea]." An outer component, placed behind the ear, receives sound and converts it into electric signals. It wirelessly transmits the signals to a surgically implanted inner component, which in turn stimulates the nerve endings of the cochlea. The nervous system transmits the impulses to the brain, which interprets them as sound.

CCP originally denied McKenzie's request because it considered a cochlear implant specifically excluded from coverage by two exclusions in the CCP policy. The relevant exclusions provide:

**Section 2:**

**What's Not Covered —**

**Exclusions**

. . . .

**B.   Comfort or Convenience**

1.   Television.

2.   Telephone.

3.   Beauty/Barber service.

4.   Guest service.

5.   Supplies, equipment, and similar incidental services and supplies for personal comfort. Examples include:

    — Air conditioners.

    — Air purifiers and filters.

    — Batteries and battery charges.

    — Dehumidifiers.

    — Humidifiers.

6.   Devices and computers to assist in communication and speech.

. . . .

**Q.   Vision and Hearing**

1.  Purchase cost of eye glasses, contact lenses, or hearing aids.

2.  Fitting charge for hearing aids, eye glasses or contact lenses.

3.  Eye exercise therapy.

4.  Radial keratotomy.

5.  Laser and other refractive eye surgery.

CCP notified McKenzie that it regarded a cochlear implant as both "a form of hearing aid" and a "[d]evice . . . assist[ing] in communication and speech."

Dr. Lambert then wrote CCP, explaining that cochlear implants are not hearing aids, which "merely amplify sound," but "implantible prosthetic device[s]" that are "implant[ed]" in the body by an operation to "code sounds and then replicate it electronically." CCP eventually dropped the "hearing aid" rationale for denying the claim.

With respect to CCP's other ground for denying coverage — the exclusion for "[d]evices and computers to assist in communication and speech" — Dr. Lambert wrote that "[a] cochlear implant is not recommended based on comfort or convenience." Moreover, the doctor explained, unlike "non-electric augmentative or alternative . . . communication boards," cochlear implants are not "device[s] . . . used to assist in communication and speech." *Id.*

Unpersuaded, CCP continued to deny coverage on this ground.*  McKenzie then brought this suit in state court, and CCP removed it to federal court. The district court found that CCP abused its discretion in refusing to authorize McKenzie's cochlear implant and

---

*This exclusion provided CCP's sole ground for denial of McKenzie's claim. As CCP's counsel conceded at oral argument, the company does not argue that, without the exclusion, cochlear implants would not be covered by the plan.

ordered CCP to provide coverage. The district court also awarded attorneys' fees to McKenzie. CCP appeals both orders.

II.

A.

CCP initially contends that, in holding CCP abused its discretion in denying McKenzie benefits, the district court did not sufficiently defer to CCP as an ERISA plan administrator with discretion to interpret the plan.

When an ERISA plan grants its administrator discretion, a court reviews the administrator's decision for abuse of discretion, rather than *de novo*. *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir. 2004) (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). McKenzie concedes that the plan granted CCP "discretion to interpret the benefits and other terms and exclusions." Brief of Appellee at 10. Consequently, we must review CCP's decision for abuse of discretion.

However, when a plan administrator with discretion faces a conflict of interest "such that its decision to award or deny benefits impacts its own financial interests," we modify the abuse of discretion standard. *Smith*, 369 F.3d at 417. We decrease the deference accorded to the ERISA administrator "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Id.* at 418 (*quoting Doe v. Group Hospitalization and Med. Servs.*, 3 F.3d 80, 87 (4th Cir. 1993)) (internal quotation marks omitted). Under this "sliding scale[,] [t]he more incentive for the administrator . . . to benefit itself," the less a court defers. *Id.* (*quoting Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997)) (internal quotation marks omitted). CCP admits "that it is both the plan administrator and insurer" and thus faces "a conflict of interest under Fourth Circuit law." Brief of Appellant at 11. Nevertheless, CCP argues that it should receive substantial deference because the financial impact of McKenzie's claim is assertedly minimal and "the mere fact that a defendant is acting as administrator and insurer should not, without more, have a significant impact on the deference granted to its decision." *Id.* at 14.

Precedent offers CCP little support for this view. We have consistently reduced the deference afforded to administrators based on the "mere" fact that they also insure the plan and thus profit by denying claims. *See, e.g.*, *Stup v. Unum Life Ins. Co.*, 390 F.3d 301, 307 (4th Cir. 2004); *Evans v. Metro. Life Ins. Co.*, 358 F.3d 307, 311 (4th Cir. 2004); *Doe*, 3 F.3d at 85-87. In so holding, we have recognized that the Supreme Court has directed that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict *must* be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (internal quotation marks omitted) (emphasis added). Moreover, recently the Court has questioned "the degree to which a plan provision for unfettered discretion in benefit determinations guarantees truly deferential review . . . when the judicial eye is peeled for conflict of interest." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 384 n.15 (2002).

This is not to say that evidence of cost is irrelevant — a frequent and expensive claim might well demand comparatively more scrutiny on the "sliding scale" than an inexpensive and infrequent claim.

But the fact is, when an entity both administers and insures a plan, its profits (or losses) depend in part on how the actual cost of providing coverage diverges from the projections on which it based premiums. Over time, a predilection to deny coverage pays well, even for inexpensive and infrequent treatments. Of course, in a chalkboard-perfect market, consumers might punish a particularly biased insurer; but in reality, health insurance companies benefit financially when they deny claims. This conflict demands diminished deference to the administrator's decisions, whatever the amount at issue. Consequently, the district court did not err in its application of a modified abuse of discretion standard. We apply the same standard in our review of the administrator's decision.

Under a modified abuse of discretion standard, an administrator's decision will be upheld if it is reasonable. *Stup*, 390 F.3d at 307. Courts consider the following nonexclusive factors in assessing the reasonableness of an administrator's decision:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to

make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). With these principles in mind, we turn to CCP's denial of McKenzie's claim.

B.

CCP denied McKenzie's claim on the ground that cochlear implants fell within its exclusion for "[d]evices and computers to assist in communication and speech." The district court held that CCP abused its discretion by denying McKenzie coverage on this ground. The court reasoned that the language in the exclusion on which CCP relied was ambiguous, that other provisions in the ERISA plan were inconsistent with CCP's interpretation, and that the ambiguity in the plan should have been, but was not, construed against CCP, which drafted the plan.

CCP maintains that the first *Booth* factor — the plan's language — supports its decision to deny coverage. It argues that cochlear implants are "devices" designed to help individuals hear, which in turn assist with "communication" — triggering the exclusion for "devices and computers to assist in communication and speech." However, the policy language could just as easily be read to exclude only devices that "assist communication *and* speech." (Emphasis added). This would suggest the exclusion applies to augmentative communication items that assist in *both* communication and speech, not to cochlear implants, which do not directly aid a recipient's speech. Accordingly, the plan language offers no more than ambiguous support for CCP's decision.

Other *Booth* reasonableness factors weigh decidedly against CCP's interpretation of the ERISA plan. For example, CCP's decision is

inconsistent with several other provisions in the plan. When a contract groups clauses under a common heading, like the exclusions listed under "Comfort or Convenience," interpretation of one provision is informed by the company it keeps. *See, e.g.*, *Md. Cas. Co. v. City of S. Norfolk*, 54 F.2d 1032, 1037 (4th Cir. 1932). Indeed, the policy itself notes that, although its headings do not "define" an exclusion, they "group . . . items . . . that fall into a similar category." The items listed under the heading "Comfort or Convenience" — television, telephone, beauty/barber service, guest service, air conditioners, air purifiers and filters, batteries and battery charges, dehumidifiers, and humidifiers — do not "fall into a similar category" as cochlear implants. They differ *in kind*. The listed items "comfort" and remedy the "[in]convenience[s]" facing an ill person; a cochlear implant remedies a disability and enables the recipient to function more fully in the world.

When the exclusion for "[d]evices and computers to assist in communication and speech" is read along with the exclusions under the heading "Vision and Hearing," CCP's interpretation seems even more strained. The policy specifically excludes, under the "Vision and Hearing" heading, "eyeglasses, contact lenses, [and] hearing aids" — but *not* cochlear implants. It is reasonable to infer from this omission that the parties did not intend to exclude coverage of cochlear implants. *See R.L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 658-59 (7th Cir. 1999). Further, an exclusion for "vision and hearing" is far more specific than an exclusion for "[d]evices and computers to assist in communication and speech," which could, at least arguably, govern a wide range of treatments and services. Since the exclusion that specifically addresses hearing *fails* to exclude cochlear implants, we hesitate to read a more general exclusion to do so. *See Baton Rouge Oil & Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002).

CCP's reading of the "devices and computers" provision also runs afoul of the well-established doctrine that a contract should be read to give effect to all its language. *See, e.g.*, *Bank v. IBM Corp.*, 145 F.3d 420, 428-29 (1st Cir. 1998). Under CCP's interpretation, the plan would exclude hearing aids from coverage as "devices . . . to assist in communication and speech." But if the plan excluded them

under this provision, there would be no reason for it to exclude hearing aids expressly, as it does, in the "Vision and Hearing" exclusion.

Faced with such ambiguity, a reasonable administrator-insurer would look to an important external standard for interpreting an ambiguous contractual provision — that it be construed against the drafting party. *See Doe*, 3 F.3d at 89. CCP acknowledges the existence of this rule, often called *contra proferentem*, but argues that it should not apply here. According to CCP, when an administrator's only conflict is that it also insures the plan, it should be free to construe plan ambiguities against the insured. Brief of Appellant at 17. Although other circuits have taken this approach, *see, e.g.*, *Morton v. Smith*, 91 F.3d 867, 871 n.1 (7th Cir. 1996), we have not.

We directly addressed this question in *Doe*, 3 F.3d at 85-87. There, as here, the ERISA plan gave the administrator the discretion to interpret the terms of a plan that it also insured; we reviewed the denial of benefits under a modified abuse of discretion standard. *Id.* at 85-87. In the course of our review, we held that "we may take account of the principle that in making a reasonable decision, ambiguity which remains in the [ERISA plan language] must be construed against the drafting party, particularly when, as here, the contract is a form provided by the insurer rather than one negotiated between the parties." *Id.* at 89. We agreed with the Ninth Circuit that "using a presumption such as construction against the drafter in evaluating the reasonableness of an interpretation is not inconsistent with review for abuse of discretion." *Id.* (*citing Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990)). We have since frequently followed this rule, *see, e.g.*, *Bynum v. CIGNA Healthcare of N.C., Inc.*, 287 F.3d 305, 313-14 (4th Cir. 2002); *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 57-58 (4th Cir. 1995), and even if we could do so, we see no reason to abandon it now. When an ERISA plan vests discretion in an administrator who also insures the plan, reasonable exercise of that discretion requires that the administrator construe plan ambiguities against the party who drafted the plan.

We note that applying this principle does *not* deprive an administrator-insurer of its discretion under an ERISA plan. When an administrator applies *un*ambiguous plan terms to the facts of a particular claim, courts will defer to every judgment the administrator

makes that is supported by substantial evidence and a reasoned decisionmaking process.

But when plan language is ambiguous, this well-established doctrine of *contra proferentem* does apply, and for good reason. Ambiguity imposes costs on the parties to a contract: one party may rely on an errant interpretation, or find its original intent flouted if a dispute arises. *Contra proferentem* shifts the cost of ambiguity to the party best positioned to avoid and bear it — the administrator-insurer who drafts the plan and who can spread the costs of ambiguity across all policy-holders. Encouraging clarity in ERISA plans also contributes to a more efficient market for health insurance, promoting healthy and open competition. Consumers, whether individuals or organizations, can more easily compare lists of covered and excluded treatments than they can compare guesses of how different insurers will interpret ambiguous plan language. Further, as we discussed above, administrator-insurers face a conflict of interest. Construing ambiguity against the drafter encourages administrator-insurers to write clear plans that can be predictably applied to individual claims, countering the temptation to boost profits by drafting ambiguous policies and construing them against claimants.

We do recognize the legitimacy of the concern, raised by CCP's counsel during argument, that drafting and updating a clear insurance policy can be costly — especially in the changing and heavily regulated healthcare field. Surely, at some point, the costs of producing greater clarity outweigh its benefits. But this only supports the application of *contra proferentem*. When one party — who controls the contract language — bears both the costs and benefits of clarity, it will rationally choose the most efficient balance between clarity and ambiguity.

Given the ambiguity of the exclusion language relied on by CCP, the inconsistency between CCP's interpretation and several other provisions in the ERISA plan, and CCP's failure to construe the ambiguous language against the drafting party, we agree with the district court that CCP abused its discretion in denying McKenzie's claim for a cochlear implant.

### III.

Finally, we turn to the district court's award of attorneys' fees.

"ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir. 1993) (en banc). Unlike some federal statutes, ERISA establishes no presumption for the award of fees to a "prevailing insured or beneficiary." *Id.* at 1029.

Moreover, in awarding fees a district court must justify the exercise of its discretion by considering the following, non-exclusive general guidelines:

(1)   degree of opposing parties' culpability or bad faith;

(2)   ability of opposing parties to satisfy an award of attorneys' fees;

(3)   whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4)   whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)   the relative merits of the parties' positions.

*Id.* at 1029. We review an award or denial of attorneys' fees for abuse of discretion, *id.* at 1028-29, and the findings of fact underpinning such an award for clear error, *Johannssen v. Dist. No. 1 - Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 178 (4th Cir. 2002).

The district court found that only one factor (the fourth) weighed against an award of fees. We agree that McKenzie sought primarily to benefit herself and thus the fourth factor weighs against the award

of fees. The court found every other factor to weigh in favor of an award of fees. We agree that CCP, as a large corporation, could easily pay the fees, and thus the second factor weighs in favor of an award of fees. However, the district court incorrectly assessed the remaining three *Quesinberry* factors.

The court found the first factor, "culpability and bad faith," weighed in favor of an award of fees simply because the court concluded that CCP's denial of coverage was "unreasonable and . . . an abuse of discretion." In so finding, the court clearly erred. "Culpability" and "bad faith" require more than "mere negligence or error." *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995). Although denying McKenzie's claim furthered CCP's financial interests, the record contains *no* evidence of bad faith or culpability here.

The district court also suggested that its conclusion that CCP had abused its discretion and unreasonably denied coverage for the cochlear implant justified awarding fees against CCP on the basis of the third and fifth factors. If this were so then virtually every time a claimant prevailed in overturning an administrator's decision denying ERISA benefits, the claimant would be entitled to attorneys' fees. But, in fact, as noted above, unlike some other statutory attorneys' fees statutes, ERISA does not provide for a virtually automatic fee award to a substantially prevailing plaintiff. Therefore, a court cannot rely solely on an administrator's improper denial of coverage on a single claim to support an award of fees to a claimant. *Cf. Denzler v. Questech, Inc.*, 80 F.3d 97, 104-105 (4th Cir. 1996) (examining the merits of parties' positions *on appeal* when determining whether to award fees under *Quesinberry* five-factor test).

Thus, the only factor supporting the award of fees is that CCP, as a large corporation, can easily pay the fees. This factor, by itself, does not suffice to support an award of fees. *See Quesinberry*, 987 F.2d at 1028-30.

Accordingly, the district court abused its discretion in awarding attorneys' fees.

## IV.

For the foregoing reasons, we affirm the judgment of the district court holding that the administrator abused its discretion in denying

coverage, but reverse the award of attorneys' fees against the administrator.

*AFFIRMED IN PART AND*
*REVERSED IN PART*