**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1743

GENEESE MCKELDIN,

Plaintiff - Appellant,

versus

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (1:05-cv-02563-JFM)

Submitted: September 17, 2007      Decided: October 17, 2007

Before SHEDD, Circuit Judge, HAMILTON, Senior Circuit Judge, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Eric Wexler, MCCHESNEY & DALE, P.C., Bowie, Maryland, for Appellant. Joshua Bachrach, RAWLE & HENDERSON, L.L.P., Philadelphia, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Geneese McKeldin (McKeldin), a registered nurse, has brought this civil action against Reliance Standard Life Insurance Company (Reliance), claiming wrongful denial of long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court granted Reliance's motion for summary judgment. We affirm on the reasoning of the district court.

I.

Reliance is the insurer and claims review fiduciary of the group long-term disability plan (the Plan) under which McKeldin is seeking benefits as a plan participant. The parties agree the Plan is governed by ERISA.

On January 4, 2001, McKeldin was hospitalized with complaints of left calf pain and recurrent deep vein thrombosis (DVT), a problem that McKeldin had experienced for approximately twenty years. The hospital admission report also noted that McKeldin "has a history of fibromyalgia and fatigue and has been on antidepressants and anticipated work leave because of this." (J.A. 776).

At the time of McKeldin's hospitalization, she worked for Marc L. Chaiken, M.D., P.A., as a nurse manager, which position required her to be able to stand for the entire eight-hour work day.

Standing for this long caused McKeldin to suffer pain and swelling in her left calf. Following her hospitalization, McKeldin did not work for the next three months. In addition to her physical ailments, McKeldin suffered from depression.

On April 3, 2001, McKeldin applied for long-term disability benefits under the Plan's total disability provision, claiming that she was incapable of working due to DVT, as well as fibromyalgia and chronic fatigue. Relevant to the present appeal, the Plan provides long-term disability benefits when a claimant can demonstrate total disability, defined as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>
> > (1) during the Elimination Period, an Insured cannot perform each and every material duty of his/her regular occupation; and
> >
> > (2) for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
> >
> > > (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and
> >
> > (3) after a Monthly Benefit has been paid for 36 months, an Insured cannot perform each and every material duty of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow.

(J.A. 475).

Based upon the information submitted, Reliance approved McKeldin's application for long-term disability benefits and began paying such benefits on April 5, 2001. Of relevance on appeal, Reliance paid McKeldin long-term disability benefits for thirty-six months. The record indicates that for a large portion of this time, McKeldin worked two part-time jobs. One job required her to administer flu shots to hospital employees. The other job required her to perform victim sexual-assault examinations as a forensic nurse. For both jobs, McKeldin stated that she could only work three to four hours at a time and that each shift required her to recuperate for between eighteen and thirty-six hours.

Reliance notified McKeldin that she did not qualify for long-term disability benefits under the Plan beyond thirty-six months because she could perform some material duties of occupations that her education, training or experience would reasonably allow. Reliance also asserted that benefits were properly discontinued under a twenty-four month limitation on the receipt of long-term disability benefits for total disability caused by or contributed to by mental disorders.

After exhausting her administrative remedies, McKeldin initiated this ERISA action, pursuant to 29 U.S.C. § 1132(a), to challenge Reliance's denial of her claim for long-term disability benefits beyond thirty-six months. After Reliance moved for

summary judgment, McKeldin moved to take discovery in addition to the administrative record and moved for summary judgment herself. The district court subsequently granted Reliance's motion for summary judgment, denied McKeldin's motion for summary judgment, and denied her motion to take additional discovery on the ground that case law required that judicial review of Reliance's claim denial is limited to the administrative record.

In its Memorandum Opinion, the district court noted that Reliance had asserted two independent bases for its decision to deny McKeldin long-term disability benefits beyond thirty-six months: (1) "that despite her disability she is capable of performing some of the material duties of other suitable occupations," and (2) "that mental disorders have contributed to her disability." (J.A. 115). Because the district court ruled in favor of Reliance with respect to the first basis, it expressly did not address the second basis for its denial.

The crux of the district court's analysis in ruling in favor of Reliance is that when the phrase "each and every," as found in subparagraph three of the Plan's definition of "Totally Disabled," is read in conjunction with the other definitions of "Totally Disabled" in the two preceding subparagraphs, "it becomes unmistakably clear that," (J.A. 116), the phrase "each and every," as found in subparagraph three, means that an insured would be considered totally disabled **only** if she was unable to perform all

- 5 -

material duties of any occupation that the insured's education, training or experience will reasonably allow. In reaching this holding, the district court relied heavily upon our decision in Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264 (4th Cir. 2002). In Gallagher, we read language materially indistinguishable from subparagraph three's definition of totally disabled as unambiguously providing that an employee is totally disabled if he is unable to perform all duties of his regular occupation. Id. at 270.

The district court went on to hold that Reliance did not abuse its discretion in applying this plain language reading of the Plan to deny McKeldin long-term disability benefits beyond thirty-six months. Specifically, the district court held that even putting aside the physician's report by Dr. William Hauptman favorable to Reliance, which report McKeldin challenged as the biased report of a hired gun, other evidence in the administrative record including two other physician reports, the report of a vocational expert, and the denial of McKeldin's claim for disability benefits from the Social Security Administration, provided a credible and proper basis for Reliance's conclusion that McKeldin was capable of performing at least one of the material duties of a suitable occupation. Notably, the district court expressly observed that McKeldin never even attempted to refute the respective conclusions of Drs. Robert Frieman and Scott Brown, the Social Security

- 6 -

Administration, and the vocational expert that she was capable of performing at least one of the material duties of a suitable occupation.

McKeldin subsequently moved to amend the judgment on the basis that the district court allegedly misread the relevant Plan language.  The district court denied the motion and this timely appeal followed.


II.

We review the district court's grant of summary judgment in favor of Reliance de novo, applying the same standards as the district court employed.  Evans v. Metropolitan Life Ins. Co., 358 F.3d 307, 310 (4th Cir. 2004).  Because the Plan gives Reliance discretion to determine McKeldin's eligibility for Plan benefits, and since Reliance is also the Plan's insurer, we review Reliance's decision to deny McKeldin long-term disability benefits beyond thirty-six months under the modified abuse of discretion standard. Id. at 311.  Under the modified abuse of discretion standard, the denial of benefits will be upheld if the decision is reasonable, Carolina Care Plan Inc. v. McKenzie, 467 F.3d 383, 387 (4th Cir. 2006), and Reliance's conflict of interest "must be weighed as a factor in determining whether an abuse of discretion occurred." Evans, 358 F.3d 311.

Moreover, when, as here, an ERISA plan vests discretion in the decision-maker, who also insures the plan, reasonable exercise of that discretion requires that the decision-maker/insurer "construe plan ambiguities against the party who drafted the plan." Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 389 (4th Cir. 2006). The automatic construction of ambiguous language against the drafter is known as the doctrine of contra proferentem. Id. In Carolina Care Plan, we carefully explained that application of the doctrine of contra proferentem in the ERISA plan context does not deprive a decision-maker/insurer of its discretion under an ERISA plan. Id. Rather, we explained, when a decision-maker/insurer "applies *un* ambiguous plan terms to the facts of a particular claim, courts will defer to every judgment the [decision-maker/insurer] makes that is supported by substantial evidence and a reasoned decisionmaking process." Id.

III.

The Plan's definition of "Totally Disabled" is at the heart of the dispute in this case. McKeldin argues that the language stating "an Insured cannot perform each and every material duty of any occupation" in subparagraph three of the Plan's definition of "Totally Disabled" is ambiguous, and therefore, should be construed in her favor. Reliance defends the district court's plain-language

- 8 -

reading of the language at issue in subparagraph three by relying on our decision in <u>Gallagher</u>, 305 F.3d at 270.

We hold the district court correctly determined that the language stating "an Insured cannot perform each and every material duty of any occupation" in subparagraph three of the Plan's definition of "Totally Disabled" unambiguously means that a Plan participant does not qualify for long-term disability benefits beyond thirty-six months unless such participant is unable to perform all of the material duties of any occupation that such participant's education, training or experience will reasonably allow. In so holding, we fully agree with the district court's plain-language analysis of the Plan language at issue. In the words of the district court:

> While partial disability is sufficient to establish eligibility for receipt of total disability benefits during the 36-month period, it does not suffice to qualify an insured as "totally disabled" as defined in subparagraph one for the Elimination Period. Thus, *a fortiori*, the phrase "each and every," at least as used in subparagraph one, must mean that an insured who can perform one or more of the material duties of her job, but not all, is not "totally disabled."
>
> Because "it is logical to assume that the words were intended to convey the same meaning both times they were used," the court adopts the same interpretation of "each and every" for subparagraph three.

(J.A. 117-18) (internal quotation marks, citations, and alteration marks omitted). In short, when the language at issue in subparagraph three is read in context with the language of subparagraphs one and two, the language at issue in subparagraph

- 9 -

three is only reasonably susceptible of the district court's interpretation.

Reliance is also correct that our decision in Gallagher supports the district court's plain-language analysis. In Gallagher, we read language identical to subparagraph three's definition of totally disabled as unambiguously providing that an employee is totally disabled if he is unable to perform all the duties of his regular occupation. Id. at 270. This reading is wholly consistent with reading the "each and every material duty" language of subparagraph three as unambiguously providing that in order to qualify for long-term disability benefits beyond the thirty-six month period, the plan participant applying for such benefits must be unable to perform all of the material duties of any occupation that such plan participant's education, training or experience will reasonably allow.

We also agree with the district court's holding that even putting aside Dr. Hauptman's report favorable to Reliance, other evidence in the administrative record including two other physician reports, the report of a vocational expert, and the denial of McKeldin's claim for disability benefits from the Social Security Administration, provided a credible and proper basis for Reliance's conclusion that McKeldin was capable of performing at least one of the material duties of a suitable occupation. For example, the record contains the assessment of a vocational expert who concluded

that McKeldin could perform some of the material duties of various occupations that matched her education and training, for example, Holter Scanning Technician and Optometric Assistant, and that she could perform all of the material duties of a Cardiac Monitor Technician. Notably, McKeldin points us to nothing in the record which contradicts these conclusions of the vocational expert despite the fact that she bears the burden of proof. See Gallagher, 305 F.3d at 270 (ERISA plan participant bears burden of proof that he qualifies for long-term disability benefits).

In sum, because substantial evidence supports Reliance's denial of McKeldin's claim for long-term disability benefits based upon its straightforward application of the unambiguous terms of the Plan, we affirm on the reasoning of the district court.[1]

---

[1]Given our disposition, we do not reach Reliance's alternative argument that, even if the language at issue in subparagraph three is ambiguous, it still wins because the Plan expressly gave it the discretionary authority to resolve ambiguities in the Plan.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.[2]

AFFIRMED

---

[2]Finally, we note that McKeldin argues the district court committed reversible error by denying her request for discovery of evidence of Reliance's conduct in handling her claim that is not in the claim file. She speculates that such evidence has the potential to support her allegation that Reliance's denial of her claim for long-term disability benefits beyond thirty-six months was simply the result of its conflict of interest. Her argument is mooted by the fact that the district court's analysis already took into account Reliance's conflict of interest as the Plan's decision-maker/insurer.