# United States Court of Appeals
## For the First Circuit

No. 02-1701

IN RE: CHARLIE AUTO SALES, INC.,
Debtor.

CHARLIE AUTO SALES, INC.,

Plaintiff, Appellant,

v.

MITSUBISHI MOTOR SALES OF CARIBBEAN, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Vilman M. Dapena Rodrígues with whom Manuel Porro-Vizcarra was
on brief for appellant.
Rubén T. Nigaglioni for appellee.

July 17, 2003

**LIPEZ**, **Circuit Judge**.  On December 18, 2000, plaintiff Charlie Auto Sales, Inc. (CAS) filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (2003), resulting in an automatic stay pursuant to 11 U.S.C. § 362.  CAS appeals from the judgment of the district court affirming the holding of the bankruptcy court that a consent order between CAS and Mitsubishi Motor Sales of Caribbean, Inc. (MMSC) modifying the automatic stay permitted the termination of the dealership relationship between CAS and MMSC.  We affirm.

## I.

MMSC is the exclusive distributor of Mitsubishi and Hyundai products in Puerto Rico; CAS is a servicing dealer of Mitsubishi and Hyundai brand motor vehicles.  The relationship between MMSC and CAS is governed by a Servicing Dealership Agreement (SDA).  Although MMSC and CAS have been embroiled in legal disputes since 1994, this particular dispute arises out of CAS's voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.  Pursuant to 11 U.S.C. § 362(a), such a petition gives rise to an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor."  This stay prevented MMSC from invoking the termination provisions of the SDA and terminating the dealership relationship between MMSC and CAS.

On January 26, 2001, MMSC filed a motion to dismiss CAS's petition for Chapter 11 reorganization for bad faith[1] or, alternatively, to modify the automatic stay to allow MMSC to arbitrate the issue of just cause for termination of the distribution relationship. A hearing on this motion was scheduled for February 15, 2001. However, a couple of days prior to the hearing, the parties agreed to negotiate a settlement of the issues raised by MMSC's motion. The parties understood this settlement to be "a precondition to commencing good-faith negotiations for the settlement of all past, present and future claims between the parties." On the afternoon of February 12, 2001, the attorneys met in the offices of Attorney Charles A. Cuprill Hernandez, counsel for CAS,[2] and Cuprill drafted a consent order embodying the terms

---

[1] The motion to dismiss the Chapter 11 petition for bad faith was based on the allegation that CAS had filed the petition to preempt certain for-cause termination of the dealership agreement. In its motion, MMSC alleges that CAS was caught

> attempting to bribe the expert appointed by the [arbitration] panel into certifying fraudulent claims it had made against MMSC in an ongoing arbitration between the parties. . . . It is only out of the desperation resulting from the uncontroverted evidence supporting the bribery charge that, a month after a hearing on the matter and three days after briefs on the issue were submitted, the [Chapter 11] petition in the instant case was filed. . . . The purpose of this bankruptcy is clear: to delay the termination of the distribution relationship.

[2] There is conflicting information in the record concerning the length of the February 12 meeting. Attorney Michael J. Rovell,

of the negotiated agreement, which the parties submitted to the bankruptcy court for approval. The order, entered on February 13, 2001, by the bankruptcy court without change, reads as follows:

> This Court hereby modifies the stay provisions of 11 U.S.C. § 362(a) in order to allow Mitsubishi Motor Sales of Caribbean, Inc. ("MMSC"), to give notice of termination to Debtor of MMSC's dealership relationship therewith and proceed with arbitration as to the termination of the dealership relationship.

On February 15, 2001, MMSC sent CAS a letter notifying CAS of the termination of the dealership relationship between MMSC and CAS, effective March 17, 2001. The following day, MMSC filed an action with an arbitration panel[3] requesting a finding that the termination was for just cause and, therefore, that CAS was not entitled to any damages under Act 75 of Puerto Rico's Dealer's Act, 10 P.R. Laws Ann. § 278 et seq. (2002). On March 19, 2001, CAS filed an urgent motion to stay the termination of the dealership relationship on the grounds that the termination violated the automatic stay and, in the alternative, that it violated the consent order. The bankruptcy court denied the motion without

---

counsel for Charlie LaCosta, President of CAS, testified that the meeting lasted between half an hour and an hour. Attorney Charles A. Cuprill Hernandez, counsel for CAS, testified that the meeting lasted between three and four and a half hours.

[3] The SDA provides for resolution of disputes between the parties by arbitration in accordance with the rules and regulations of the American Arbitration Association. An arbitration panel had been appointed in accordance with these provisions to oversee a previous proceeding commenced by CAS against MMSC in 1994.

prejudice to CAS filing it as an adversary proceeding, which CAS did on March 21, 2001. On May 24, 2001, after holding hearings on May 14 and 18, the bankruptcy court ruled in a bench decision that the consent order modified the automatic stay and provided for actual termination of the dealership relationship between MMSC and CAS. Finding "ample evidentiary support in the record" for the findings of the bankruptcy court, the district court subsequently affirmed the decision.

## II.

"In an appeal from district court review of a bankruptcy court order, this court independently reviews the bankruptcy court's decision, ordinarily applying the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." Stoehr v. Mohammed Bin Abdul Rahman Al Saud, 244 F.3d 206, 207-08 (1st Cir. 2001). CAS argues that, contrary to the decision of the bankruptcy court, the terms of the consent order do not provide for actual termination of the dealership agreement. Rather, they modify the stay to allow MMSC to commence arbitration proceedings to determine whether there was just cause for the termination of the dealership relationship. The relationship would remain unaltered until the arbitration panel decided the just cause issue. MMSC defends the bankruptcy court's determination that, consistent with the terms of the SDA, the language "notice of

termination" in the consent order allowed MMSC to actually terminate the dealership relationship.

The bankruptcy court determined that the consent order was a "compromise settlement governed by 31 Laws of Puerto Rico Annotated 482" whose scope "depends upon the meaning of the phrase 'notice of termination.'" A court's interpretation of a contract or consent order is reviewed for clear error "if the writing is subject to more than one reasonable interpretation," Gel Systems, Inc. v. Hyundai Eng'g & Constr. Co., 902 F.2d 1024, 1027 (1st Cir. 1990), or if the court relies on extrinsic evidence such as the parties' intent. Wainwright Bank & Trust Co. v. Boulos, 89 F.3d 17, 23 (1st Cir. 1996); see also Servicios Comerciales Andinos, S.A. v. GE Del Caribe, 145 F.3d 463, 469 (1st Cir. 1998). The bankruptcy court interpreted "notice of termination" by reference to the parties' intent "judged by considering the actions of the parties at the time of the agreement and [] thereafter." Thus we review the bankruptcy court's determination of the scope of the consent order for clear error.

Except for situations not relevant to this appeal, Article X of the SDA requires MMSC to give CAS written notice before it terminates the dealership relationship. Notice must be given either thirty or ninety days prior to actual termination, depending upon CAS's offending conduct. This pre-termination notice is referred to in Article X of the SDA as "notice of

-6-

termination."  MMSC argues that the term "notice of termination" in the consent order carries the same meaning as the term in Article X of the SDA: it contemplates a notice period prior to actual termination of the dealership relationship.  CAS argues that the term "notice of termination" in the consent order does not refer back to the SDA and merely requires MMSC to give CAS prior notice of its intention to arbitrate the issue of just cause for termination of the dealership agreement.  According to CAS, only after the arbitration panel has determined that there is just cause can MMSC actually terminate the dealership relationship.

Taking into consideration the entirety of the relationship between MMSC and CAS, the bankruptcy court concluded that "notice of termination" was a term of art to be understood in the context of Article X of the SDA.  Because the SDA was the most important document governing the relationship between MMSC and CAS, and because the attorneys for both MMSC and CAS were familiar with the terms of the SDA, it was reasonable for the bankruptcy court to find that CAS's use of the term "notice of termination" in the consent order was consistent with the meaning embodied in the SDA, and hence contemplated an actual termination of the dealership relationship after the requisite notice period.

The bankruptcy court supported this interpretation of the intent of the parties by reference to CAS's actions subsequent to the drafting of the consent order.  On February 15, 2001, three

days after the consent order was executed, MMSC gave CAS notice of termination, making clear that termination would become effective on March 17, 2001.  On February 16, 2001, as stipulated by the consent order, MMSC filed before the arbitration panel a request for a declaratory judgment determining that the termination of the relationship was for just cause.  In the month leading up to the termination date, MMSC sent letters to CAS regarding the procedures to be followed in preparation for termination, and published advertisements in various newspapers advising the public that CAS would cease to be an MMSC servicing dealer effective March 17, 2001.  Throughout these preparations for termination CAS remained silent.  CAS did not file a motion to stay termination of the dealership agreement until March 19, when representatives of MMSC entered the premises of CAS to remove signs, logos and various equipment.  As an explanation for this passivity, CAS offered the implausible argument that it thought MMSC was merely "posturing." CAS's inaction for over thirty days confirms the bankruptcy court's conclusion that CAS understood that the phrase "notice of termination" contemplated actual termination at the completion of the notice period.

Although CAS argued that it "would never have signed a document specially after filing Chapter 11, that [] would have resulted in the liquidation of appellant's primordial asset from which it expected to fully reorganize," the bankruptcy court found

"no evidence of [these assertions] other than the argument of counsel."  The bankruptcy court's conclusion that CAS agreed to actual termination of the dealership relationship is not, as CAS suggests, illogical.  CAS gained something of value from the consent order--MMSC's agreement to abandon its motion for dismissal of CAS's bankruptcy petition, and to pursue good-faith negotiations for the settlement of all outstanding disputes between the parties. Given the ample evidentiary support in the record for the determination that the consent order modified the automatic stay and provided for actual termination, the bankruptcy court's interpretation of the consent order is not clearly erroneous.

**<u>Affirmed</u>**.