**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2085**

EMPLOYERS COUNCIL ON FLEXIBLE COMPENSATION,

               Plaintiff – Appellee,

       v.

KENNETH FELTMAN; ANTHONY W. HAWKS; EMPLOYERS COUNCIL ON
FLEXIBLE COMPENSATION, LTD.,

               Defendants – Appellants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  James C. Cacheris, Senior
District Judge.  (1:08-cv-00371-JCC-TRJ)

Argued:  May 12, 2010           Decided:  June 21, 2010

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Edward A. Pennington, HANIFY & KING, Washington, D.C.,
for Appellants.  Bernard Joseph DiMuro, DIMUROGINSBERG, PC,
Alexandria, Virginia, for Appellee.  **ON BRIEF**: Anthony W. Hawks,
HAWKS LAW OFFICE, Bethany Beach, Delaware, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2008, the Employers Council on Flexible Compensation ("ECFC") instituted this civil action in the Eastern District of Virginia against Kenneth Feltman, Anthony W. Hawks, and the Employers Council on Flexible Compensation, Ltd. (collectively, the "defendants"), alleging trademark infringement and cybersquatting. Shortly thereafter, the parties entered into a Permanent Injunction Order (the "Consent Order"), agreeing that certain of ECFC's marks were protected under the Lanham Act and the Anticybersquatting Consumer Protection Act (the "ACPA"). Deeming the Consent Order a concession of liability on the trademark infringement and cybersquatting claims, the district court awarded ECFC attorney fees under the Lanham Act and statutory damages pursuant to the ACPA. See Flexible Benefits Council v. Feltman, No. 1:08-cv-371 (E.D. Va. May 14, 2009) (the "Damages Opinion").[1] The defendants have appealed, primarily contending they did not admit liability in the Consent Order and, in any event, that attorney fees and statutory damages were not warranted. As explained below, we affirm.

---

[1] The Damages Opinion is found at J.A. 1328–58. (Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

2

ECFC — a nonprofit lobbying organization dedicated to the maintenance and expansion of private employee benefit programs — was incorporated in 1981 in the District of Columbia under the name "Employers Council on Flexible Compensation." Between 1981 and 2008, ECFC continuously and exclusively used "Employers Council on Flexible Compensation" as its legal and trade name. The organization also used the acronym "ecfc," as well as an "ecfc" logo, to further designate its products and services. For example, in 1999, ECFC registered the domain name "ecfc.org," at which it maintained a website promoting flexible benefit compensation programs.

In 1996, ECFC encountered severe financial problems, which threatened the organization with bankruptcy. Defendant Kenneth Feltman, who was then ECFC's executive director, was asked to create a separate management company that could assume ECFC's day-to-day operations and minimize the organization's indebtedness. Accordingly, Feltman incorporated Radnor, Inc. ("Radnor"), a political consulting firm specializing in, inter alia, management services. In 1997, 2003, and 2005, ECFC and Radnor entered into separate management service agreements ("MSAs"), under which Radnor agreed to hire ECFC's staff (including Feltman) and to exercise management services for ECFC. Thus, although Feltman was technically no longer an ECFC

employee after the 1997 MSA, he continued to play a significant role in its management.

In 2007, ECFC's relationship with Radnor soured, prompting ECFC to terminate the 2005 MSA. In November 2007, ECFC initiated an arbitration proceeding against Radnor in the District of Columbia, alleging that Radnor and Feltman had pilfered millions of dollars owed to ECFC. Radnor thereafter filed a counterclaim in the arbitration proceeding, asserting that ECFC had wrongfully terminated the 2005 MSA.

In January 2008, defendant Anthony W. Hawks — a lawyer representing Radnor and Feltman in the arbitration proceeding — discovered that ECFC's corporate charter had been revoked in September 1998 because ECFC had failed to file certain reports with the D.C. Department of Consumer and Regulatory Affairs (the "DCRA"). Rather than notifying ECFC, Feltman and Hawks instead attempted to determine the legal implications of the revocation. Based on limited legal research, Hawks concluded that, pursuant to D.C. law, ECFC was dissolved as a matter of law and had forfeited any rights it had in the marks "ecfc" and "Employers Council on Flexible Compensation." Accordingly, in February 2008, Feltman and Hawks formed a for-profit corporation in the District of Columbia under the name "Employers Council on Flexible Compensation, Ltd." ("ECFC Ltd."), with each serving as part owner thereof. Feltman and Hawks reserved with the DCRA

4

the acronym "ecfc," the trade name "Employers Council on Flexible Compensation," and twenty-one variations of that name. Moreover, in March 2008, Hawks applied to the United States Patent and Trademark Office to register the mark "Employers Council on Flexible Compensation," as well as a design mark identical to ECFC's "ecfc" logo. Finally, Feltman and Hawks obtained the domain name "ecfc.com" — which was similar to ECFC's domain name, "ecfc.org" — and maintained a website that was nearly identical to that of ECFC.

In March 2008, ECFC first learned of the revocation of its corporate charter and promptly filed for reinstatement. Because Feltman and Hawks had reserved "Employers Council on Flexible Compensation" as the trade name of ECFC Ltd., ECFC could not be reinstated under its former name and instead chose "Flexible Benefits Council" (though it continued to operate its website at the domain name "ecfc.org"). Soon thereafter, on April 17, 2008, ECFC filed this lawsuit against the defendants in the Eastern District of Virginia, alleging, inter alia, trademark infringement, in contravention of § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and cybersquatting, in contravention of the ACPA, 15 U.S.C. § 1125(d). By its complaint, ECFC sought injunctive relief (1) prohibiting the defendants from using the name "Employers Council on Flexible Compensation" and any variation thereof, as well as the acronym "ecfc," and (2)

5

ordering the defendants to relinquish the "ecfc.com" domain name. ECFC also sought reasonable attorney fees under § 35(a) of the Lanham Act, which authorizes a court "in exceptional cases [to] award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Finally, pursuant to the ACPA, ECFC sought up to $100,000 in statutory damages on its cybersquatting claim. See id. § 1117(d) (authorizing recovery of "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name").

During various hearings conducted over the ensuing months, ECFC and the defendants indicated to the district court that they were intent on settling the lawsuit, but that they disagreed on damages. The defendants maintained that, because they had reasonably believed that they could legally use the name "Employers Council on Flexible Compensation" and the "ecfc" logo, their conduct did not warrant awarding ECFC attorney fees under the Lanham Act or statutory damages under the ACPA. Because the only issue in dispute was whether attorney fees and statutory damages were warranted, the parties agreed to the Consent Order, entered by the court on October 22, 2008. Therein, the defendants agreed "not to contest further the distinctiveness of [ECFC's] marks" or its "ownership of or rights in" those marks. J.A. 974. The defendants also acknowledged that ECFC's "marks are subject to the protections

6

of the Lanham Act." Id. The Consent Order permanently enjoined the defendants from using in any manner ECFC's marks and any names affiliated with the organization, thereby allowing ECFC to re-register itself with the DCRA under the name "Employers Council on Flexible Compensation." Finally, the defendants agreed to transfer the domain name "ecfc.com" to ECFC.

Thereafter, the district court — by the Damages Opinion of May 14, 2009 — granted ECFC's request for attorney fees and statutory damages. Notably, the court predicated its ruling on the Consent Order, recognizing "[a]t the outset . . . that Defendants have admitted liability for trademark infringement . . . and cybersquatting." Damages Opinion 6. The court also observed that, "[a]s agreed to by the parties, the issues remaining for the Court are [ECFC's] requests for two of the types of damages available under these statutes: attorney[] fees . . . and statutory damages." Id. In other words, the court deemed the Consent Order to be the defendants' concession of liability under the Lanham Act and the ACPA, obviating any need to assess the merits of ECFC's claims.

Turning to ECFC's request for attorney fees under the Lanham Act, the district court found that the defendants had willfully and deliberately copied ECFC's logo and other items from ECFC's website in order to divert ECFC's profits to themselves. The court also found that Feltman and Hawks had

7

intentionally reserved the name "Employers Council on Flexible Compensation" in an effort to prevent ECFC from reinstating its corporate charter under that name.  The court thus determined that the defendants had acted in bad faith and that the dispute amounted to an "exceptional case," warranting an award of reasonable attorney fees to ECFC in an amount to be determined following an evidentiary hearing.  See Damages Opinion 28.[2]  As to ECFC's request for statutory damages under the ACPA, the court found that the defendants had deliberately registered a domain name ("ecfc.com") that was confusingly similar to ECFC's domain name ("ecfc.org").  Accordingly, the court awarded ECFC $20,000 in statutory damages.  See id. at 30.

On May 29, 2009, the defendants filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), contending that the district court's award of attorney fees and statutory damages was based on the clearly erroneous factual finding that the defendants had, by the Consent Order, admitted liability under the Lanham Act and the ACPA.  In addition, simultaneous with their motion for reconsideration, the defendants moved the court to amend the Consent Order to clarify that they had not conceded liability on ECFC's trademark

---

[2]  The district court ultimately awarded ECFC $292,500 in attorney fees under the Lanham Act.  The amount of the award is not an issue in this appeal.

8

and cybersquatting claims. By its Memorandum Opinion of August 20, 2009, the court denied each of the defendants' motions, finding that the Consent Order's unambiguous terms, coupled with the parties' representations to the court before and after the Consent Order was entered, demonstrated that the defendants had conceded liability. See Employers Council on Flexible Comp. v. Feltman, No. 1:08-cv-371 (E.D. Va. August 20, 2009).[3] In denying both motions, the court emphasized that, "[w]hen both parties (repeatedly) represent to the Court that they have resolved most of the issues between them and only one issue remains, they are necessarily representing that they have resolved all of the issues but that one." Id. at 8. Because the court could find "no reason to second-guess the parties' representations on settlement matters," it again concluded that the defendants had conceded liability in the Consent Order. Id. at 9. Accordingly, the court denied the defendants' motion for reconsideration and their motion to amend the Consent Order.

The defendants have filed a timely notice of appeal, and we possess jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291.

---

[3] The district court's August 20, 2009 Memorandum Opinion is found at J.A. 1403–18.

9

We review for abuse of discretion a district court's award of attorney fees under the Lanham Act. See Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004). Any factual findings underpinning such an award, however, including the court's determination of whether the case is "exceptional," are reviewed for clear error only. See Carolina Care Plan Inc. v. McKenzie, 467 F.3d 383, 390 (4th Cir. 2006), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); see also Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., 520 F.3d 393, 402 (5th Cir. 2008) ("The findings of the district court regarding the exceptional nature of a case are reviewed for clear error."). Similarly, in assessing a district court's award of statutory damages within the range prescribed by statute, we review factual findings for clear error and the decision to award damages for abuse of discretion. See Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001).

III.

On appeal, the defendants raise several challenges to the district court's award of attorney fees and statutory damages. The crux of the defendants' appeal, however, is their contention that the court rested its damages award on a clearly erroneous

factual finding with respect to the Consent Order — namely, that the defendants had therein conceded liability under the Lanham Act and the ACPA. Accordingly, we must first assess the defendants' contention that the court erred by not independently determining whether they were liable on ECFC's trademark infringement and cybersquatting claims. We then turn to the defendants' assertion that the court erred in deeming the matter an "exceptional case," warranting an attorney fees award under the Lanham Act. Finally, we assess the defendants' contention that the court abused its discretion in determining that their conduct warranted an award of statutory damages under the ACPA.

## A.

The defendants' primary contention on appeal is that the district court abused its discretion because its award of attorney fees and statutory damages was based on the erroneous finding that they had admitted liability in the Consent Order. Emphasizing the terms thereof, the defendants maintain that the Consent Order enjoined them only from using ECFC's marks in the future and contained no explicit admission of liability with respect to their past use of ECFC's marks. They contend that, before the court could properly assess whether the defendants' conduct was willful — and warranted awarding attorney fees and statutory damages — the court first had to determine whether they were in fact liable under the Lanham Act and the ACPA. The

11

defendants conclude that, because the court made no such determination, its award of attorney fees and statutory damages must be vacated.

The defendants' contention on their concession of liability is belied by the record, however, which is replete with representations to the district court that the Consent Order resolved all issues concerning the merits of the trademark and cybersquatting claims. For example, during a motions hearing on October 15, 2008 — before the parties had agreed to the Consent Order — ECFC informed the court that the parties had resolved "98 percent" of the issues and that the only remaining issue was ECFC's request for attorney fees and statutory damages. J.A. 960. Indeed, both parties confirmed to the court that there was no longer any need for a jury trial, which had been scheduled for early December 2008, and that the damages issue could be resolved following a short evidentiary hearing. Shortly thereafter, during an evidentiary hearing on the damages issue, the court asked the parties whether there were any outstanding issues other than ECFC's request for attorney fees and statutory damages, and all parties responded that there were none.

In light of these unambiguous representations, the district court did not clearly err in finding that, by the Consent Order, the defendants had conceded liability under the Lanham Act and the ACPA. See In re Charlie Auto Sales, Inc., 336 F.3d 34, 37

12

(1st Cir. 2003) ("A court's interpretation of a contract or consent order is reviewed for clear error . . . if the court relies on extrinsic evidence such as the parties' intent." (citation omitted)). At no point after entry of the Consent Order did the defendants indicate to the court that the issue of their liability on the trademark and cybersquatting claims was outstanding and needed to be resolved. To the contrary, they asserted that those issues had been resolved by the Consent Order. See, e.g., J.A. 1367 (defendants' counsel explaining to court that "the only thing left [after the Consent Order] was the issue of willfulness" and that "[t]he only reason that was an issue is because of [ECFC's request for] attorney[] fees"). Accordingly, the defendants cannot successfully claim that the court erred in finding that, by agreeing to the Consent Order, they had admitted liability. Thus, the court did not abuse its discretion in declining to further assess the merits of ECFC's trademark infringement and cybersquatting claims.[4]

---

[4] Because this record supports the district court's finding that the defendants conceded liability in the Consent Order, we also reject their appellate contention that the court abused its discretion in refusing to amend the Consent Order. Similarly, the defendants' assertion — presented for the first time on appeal — that they could not be held liable under the ACPA because they were not the "registrants" of the "ecfc.com" domain name, see 15 U.S.C. § 1125(d)(1)(D), is without merit.

13

B.

The defendants next contend that, in awarding attorney fees pursuant to § 35(a) of the Lanham Act, the district court erred in finding this to be an "exceptional case." Section 35(a) authorizes a district court, in "exceptional cases" involving trademark infringement or cybersquatting, to "award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Although the statute does not define the term "exceptional case," we have recongized that an "exceptional case" is one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001) (internal quotation marks omitted). Put differently, "for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith." Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992). If the court deems the case exceptional, it must then exercise its discretion to determine whether attorney fees should be awarded. See Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1370 (Fed. Cir. 1999).

The defendants maintain that the district court erred in deeming this case exceptional. More specifically, they contend that, when Feltman and Hawks reserved "Employers Council on Flexible Compensation" as their new business's trade name, they

14

in good faith believed that ECFC had abandoned any rights it had in that name. Because Hawks and Feltman reasonably believed that they could legally use ECFC's marks, the theory goes, the court could not have made the requisite finding of bad faith.

The record, however, provides ample support for the district court's determination that Feltman and Hawks willfully and deliberately infringed on ECFC's marks and reserved the name "Employers Council on Flexible Compensation" in order to prevent ECFC from reinstating itself under that name. Indeed, the defendants' ill-will toward ECFC is highlighted in emails exchanged between Hawks and Feltman, wherein they admit that their goal in copying ECFC's marks was to "cause[] consternation in the ranks." J.A. 764. Moreover, the record reveals that Hawks and Feltman believed that ECFC had wrongly "stolen" the company and its profits when it terminated the 2005 MSA, and that the revocation of ECFC's corporate charter presented "an opportunity [for Feltman to] retrieve his business by competing directly against ECFC." Id. at 227. There is also ample support for the court's determination that Hawks had only conducted minimal legal research before concluding that ECFC had lost any rights to the name "Employers Council on Flexible Compensation" and the "ecfc" logo. Hawks himself testified that he spent "no more than one to two hours" researching the

15

trademark issues, despite not having encountered such a legal issue in the past "ten to twenty" years. Id. at 1075–76.

In these circumstances, the district court did not clearly err in finding that the defendants acted in bad faith and that the matter was an "exceptional case" under § 35(a) of the Lanham Act. And, having so concluded, the court did not abuse its discretion in determining that attorney fees were warranted, given the nature of the defendants' conduct. Accordingly, we reject the defendants' contentions in this regard and affirm the award of attorney fees.

C.

Finally, the defendants contend that the district court abused its discretion in concluding that their conduct warranted an award of statutory damages under the ACPA. That statute authorizes the owner of a protected mark to bring an action against any person who "has a bad faith intent to profit from that mark" and "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to . . . that mark." 15 U.S.C. § 1125(d)(1)(A). Upon proving a violation of the ACPA, the owner of the protected mark may "recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." Id. § 1117(d).

16

The district court acted well within its discretion in awarding ECFC $20,000 in statutory damages under the foregoing statutory provisions. The court carefully weighed several aggravating and mitigating factors before concluding that the defendants' conduct warranted that award. For example, the court acknowledged that the defendants had used the "ecfc.com" domain name for only a short time and apparently earned no profits therefrom. Indeed, the court observed that there had been only one occasion of actual confusion between the two domain names. Nevertheless, the court identified several factors that supported the award of statutory damages. In particular, the court emphasized that Feltman had exploited a long and close working relationship with ECFC; that the defendants had acted surreptitiously in registering their domain name, without first notifying ECFC of its corporate revocation; and that Hawks had only briefly researched whether ECFC had abandoned its legal rights in the marks "ecfc" and "Employers Council on Flexible Compensation." In these circumstances, the court did not abuse its discretion in making the award of statutory damages.

## IV.

Pursuant to the foregoing, we reject the defendants' contentions and affirm.

AFFIRMED

17